## THE ONTARIO BANK *vs.* ROOT & CONGDON.

Where a bill was filed against a defendant to charge him as the trustee of the complainants, upon an alleged assignment of the property of their debtor for their benefit, and the complainants in their bill, not as a substantive ground of equity but only as evidence and in confirmation of the fact that the defendant received such assignment in trust for their benefit, stated an agreement of the defendant to pay their debt, but which agreement was denied in the answer of the defendant ; *Held*, that the complainants, who had failed to prove the assignment in trust, could not recover on the alleged agreement.

Where the complainant sets up an agreement in his bill which would be invalid by the statute of frauds, unless it was in writing, and the defendant by his answer denies the agreement, it is not necessary for him to insist upon the statute as a bar; but the complainant, at the hearing, must establish the agreement by written evidence.

Where the complainant by his bill claims a beneficial interest under an assignment, without alleging it to be fraudulent, he cannot be permitted at the hearing to claim relief on the ground that the assignment is proved to be fraudulent.

The interest of a cestui que trust in real estate cannot be sold on an execution at law, unless the trustee holds the legal title as a clear simple trust for the benefit of the judgment debtor alone.

August 27. THIS was an appeal by L. Root, one of the defendants, from a decree of the vice chancellor of the eighth circuit ; by which decree Root was charged with the amount of a certain judgment recovered by the complainants against the defendant Congdon, on which judgment a fi. fa. had been issued and returned unsatisfied. The facts of the case, so far as is necessary to understand the questions of law decided, appear in the opinion of the court.

*A. Tabor*, for the appellant.

*B. F. Butler*, for the respondents.

THE CHANCELLOR. This case comes before me on an appeal by the defendant Root from the decree of the vice chancellor of the eighth circuit. The vice chancellor appears to have founded his decree upon the supposed agreement made with the cashier of the bank, as proved by himself and the clerks. There are at least two substantial objections to

1832.

Ontario Bank
v.
Root.

this supposed agreement, as the foundation of a decree in this case against the appellant. In the first place it is not set up in the complainant's bill as a substantive ground of equity ; and the supposed consideration thereof, as stated in the bill, did not exist in point of fact. The whole scope of this part of the bill was to charge the defendant Root as a trustee of the bank, for the surplus of the assigned property, over and above paying what was due to himself. The bill accordingly alleges that the assignment and conveyance from the Congdons were made by them and received by Root in trust, and upon the express understanding that the property conveyed and assigned should be applied in the first place to the payment of his own debts, and in the next place to satisfy the amount due on the three notes of the complainants. And the supposed agreement of Root to pay the three notes out of the surplus, is only set forth in the bill as evidence and in " confirmation of the fact" that Root received the assignment and conveyance under such trust and agreement with the Congdons as had been previously stated in the bill. This also was the only consideration which could support an agreement to pay the debt of third persons, and which agreement was not evidenced by writing. It is evident that the counsel who prepared this bill did not intend to set up the simple agreement, or the conversation between Root and the cashier, as the foundation of a bill in equity. He must have been well aware that if he had set up that agreement as the foundation of the suit, the defendant would have demurred, on the ground that the complainants, if they could recover at all, had a perfect and adequate remedy by a suit at law. By the answer and the testimony on the part of the defendant Root it is established beyond all manner of doubt, that at the time the assignment and conveyance were executed there was no trust or agreement between Root and the Congdons that he was to hold any part of the surplus of the property to pay the $1000 note drawn by the Everinghams and endorsed by the Congdons. I am also perfectly satisfied from the evidence, when taken in connection with the answer which is responsive to the bill in this respect, that the defendant Root never intended to agree to pay this particular note. R. Beach, the attorney who

was present and drew the assignment, says it was agreed at the time that the Congdons might pay the two notes of $300 and $500 out of the asssigned property. And that they requested Root to call at the bank and make an arrangement by which those two notes should not be sued, but not to make any arrangement of the $1000 note endorsed by them, as they did not intend to pay it ; alleging as a reason for not providing for that note, that I. E. Congdon said he never had the money. It is not probable, therefore, that a man of business, instead of pursuing this direction, and when he could not make such an arrangement without the consent of the Congdons, would intentionally enter into an agreement by which he would be compelled to pay that amount out of his own pocket. There is no doubt, however, on the other hand, that the cashier and clerks in the bank understood the promise to extend to all three of the notes, and that they have detailed the conversation as they understood it. Such a mistake might easily happen, as the cashier and clerks knew nothing of the directions which had been given by the Congdons, or of the distinction they had made between their own notes and the one drawn by the Everinghams and endorsed by one of the Congdons in the name of the firm. And Root did not probably know the particular situation of the several notes ; or that the note of $1000 was understood by the officers of the bank to have been discounted for the benefit of the Congdons, and that the other parties whose names appeared thereon as the drawers, were in fact nothing but sureties. Root was therefore undoubtedly making an arrangement as to what he supposed to be all of Congdons' notes, but did not suppose he was including Everingham's notes in the arrangement. The cashier and clerks, on the other hand, who understood all of the notes to be the Congdons' notes, undoubtedly made use of language which would apply to them all, and which would bring them within the terms of the agreement which the cashier supposed was intended to reach all. This therefore is one of those cases against which the statute of frauds was intended to provide ; so that a third person who had no personal interest in the matter, should not be holden upon any promise to be answerable for the debt or default of another unless it was

reduced to writing, so that there could not be any misunderstanding by witnesses, or misapprehension between the parties, as to what was intended to be agreed, and as to the extent to which such third person intended to render himself personally responsible.  As the agreement was denied in the defendant's answer, it was not necessary for him to insist upon the statute as a bar.  The complainants in such a case must produce legal evidence of the existence of the agreement, which cannot be established by parol proof merely.  (*Cozine* v. *Graham*, 2 *Paige's Rep.* 181.)  One of the witnesses goes too far, when he says it is impossible that there could have been any mistake ; as he not only swears to the infallibility of his own memory after a lapse of more than three years, but also as to the extent of the comprehension of a third person in relation to matters about which that person must necessarily have known very little.

There is no allegation in the bill that the assignment was fraudulent, or was intended to defraud creditors.  On the contrary, the complainants claim a beneficial interest under that assignment.  For this reason the complainants are not entitled to any relief on the ground of fraud in the assignment. It is therefore unnecessary to examine the question whether there was any evidence in the case which could have supported that charge if it had been made in the bill.

It is not admitted in the answer that the purchase money of the stone house lot was paid by the Congdons or out of their funds, as is supposed by the complainants' counsel in his third point.  On the contrary it appears by the schedule annexed to the answer, and made a part thereof, that the appellant, at the time the deed from Child was obtained, or shortly afterwards, paid $280 towards the purchase money of the land.  That lot therefore would not have been held by Root as a simple trustee for the benefit of the Congdons exclusively, even if there had not been an express agreement that it should be held for the security of the balance of the debt which still remained due to him from the Congdons.  And in the case of *Bogert* v. *Perry and others*, (17 *John. Rep.* 352,) the court for the correction of errors decided that the interest of a cestui

que trust, who had not the whole beneficial interest in the trust property, could not be sold on an execution at law. Our statute, which was in force when these proceedings took place, was in this respect a transcript of the *stat. 29 Ch. 2, c. 3, § 10*, (1 *Evans' Stat.* 218.) And under that statute it has been frequently decided that, to bring the case within the provisions thereof, it must be a clear and simple trust, for the benefit of the judgment debtor only ; and that a trust created partly for the benefit of the judgment debtor, and partly for the benefit of the trustee, or a third person, is not within the statute. (*Hall* v. *Greenhill*, 4 *Barn. & Ald.* 684. *Harris* v. *Booker*, 4 *Bing. Rep.* 96.) In this case, at the time the complainants' execution was sued out, the defendant Root was entitled to nearly three fourths of the whole value of the stone house lot, to pay the balance due to him including his advances for the original purchase money, &c. If the original transfer of this lot was not fraudulent, or intended merely to cover the property against creditors, the judgment and execution formed no lien upon the land ; and these complainants had no right to claim the surplus to the exclusion of other creditors of the Congdons. At the time the application was made to Root, at Albany, in March, 1828, a large balance was still due to him ; and the complainants had no right to ask that the whole estate should be conveyed to Congdon so as to subject it to the lien of their execution. If they had then filed their bill here, they would have obtained a specific lien upon the surplus as an equitable fund which could not be reached by means of an execution at law. But James and Cornell, the other creditors, subsequently obtained that surplus with the assent of Congdon who then had the right to give them the preference, and Root could not legally control this disposition of the surplus.

The appellant appears to have been at all times willing to give the complainants the surplus of the assigned property in satisfaction of their judgment, provided Congdon would consent, but was so situated that he had no right to pay it over to them without such assent. If therefore the complainants wished to secure such preference, they should have followed up their execution by a bill in this court, before the oth-

er creditors had obtained the fund from the hands of the appellant. I think the defendant Root was improperly charged with the payment of the judgment, he having received no equivalent therefor, and having done nothing by which the rights of the complainants have been in any way impaired, or from which they have sustained any injury.

The decree of the vice chancellor, so far as it makes the appellant answerable, either for the complainants' debt, or for their costs in this suit, must therefore be reversed, with costs. And unless the complainants elect to have a reference, for the purpose of ascertaining whether there were any funds or property belonging to Congdon in the hands of the appellant, at the time of the commencement of this suit, the bill as to him must be dismissed, with costs. In case they elect to have such a reference, all questions of costs, except as to the costs on this appeal, are to be reserved.