BOTTS *v.* COZINE.

A purchaser of the rights of a party to a suit, who subsequently died, has a right to proceed with the old suit by bill of revivor and supplement, or to allow that suit to drop and institute a new one. But in the latter case, he cannot bind the defendant by any offer in his former answer, nor prevent his setting up any other matter or facts not repugnant to his admissions or statements in his first answer.

Where the time for performing a contract has been extended by parol, and it is then fulfilled, it cannot be alleged that the agreement to extend being void, the conveyance is alone to be regarded in ascertaining the rights of parties. Even supposing that such a parol agreement is in this court in itself void, yet the contract may be referred to in settling rights as if it had been performed at the day.

Where a contract was assigned on the 5th of August to a volunteer, and a bond to confess judgment was given by the assignor on the 8th, and judgment had on the 12th of the same month, held, that to impeach the assignment, the creditor should show a debt existing at its date. A judgment upon a verdict might be different.

The law being that *prima facie* a voluntary assignment is valid as to subsequent creditors, proof must be given of debts or other circumstances to impeach it. Through prior creditors, subsequent ones may be let in.

*Mr. Warner* and *Mr. Sherwood,* for complainant.

*Mr. Ketchum,* for defendant.

June 12. 14. July 1.

THE ASSISTANT VICE-CHANCELLOR :—All the facts in this cause, and all the points made by counsel, may be considered under two heads. The first relates to the alleged fraud between Colden and Moore, in the transfer of the contract dated the 12th of February, 1829, made between the former and Cozine—the right against Colden, if such transaction was fraudulent—and how far Cozine is to be affected by it. The second relates to the subsequent transactions between the complainant and defendant as to the alleged agreement to accept the amount due upon the bond

and mortgage held by the defendant, and to admit the complainant to take the property upon paying that amount.

The first point is one of considerable difficulty. The second in my opinion does not admit of a doubt.

The argument of counsel has been almost exclusively confined to the second branch of the cause. I shall consider it first. It may be easily disposed of.

I. Cozine at the date of the negotiations between Botts and himself was the absolute owner of the premises under the master's deed in the suit of foreclosure, subject to no claim but the equity of Botts, if any existed. It is clear that the amount of the principal, interest and costs referred to in the course of those negotations, was for the purpose of fixing a price for the land, not as recognizing that Cozine was mortgagee, and not owner. The evidence of any contract at all is unsatisfactory. The interview at Drew's was broken off upon a difference as to the cash payments. They were to meet at Wyckoff's on a subsequent day, and Cozine did not attend to fulfil the arrangement. It is sworn to by Wyckoff that Cozine instructed his son, now deceased, to sell the farm, whenever he could get the mortgage money, interest and costs; that on a certain occasion, (which I infer was after the interview at Drew's,) his son informed Cozine that he had sold the farm to Botts for $6,000, being something over the amount due, and that Cozine refused then to give the title. I view it as a case entirely within the statute. There is no written contract signed by Cozine or by Wyckoff, his agent. The subscription of the one or of the other is necessary, although the authority of the agent may be proven by parol.

Cozine in his answer denies an agreement to sell, stating merely that he proffered to sell upon receiving payment in cash in full, which Botts said he could not do; and as there is this denial, the statute of frauds, though not relied upon in the answer, may be set up at the hearing. (*Ontario Bank* v. *Root*, 3 *Paige*, 478.)

There remains upon this point but one piece of evidence to be examined, viz. the answer of Cozine to the bill of Pelletrau.

It appears that the bill was filed about the 8th October, 1832 ; that Cozine purchased at the master's sale on the 2d of October, 1832, and filed his answer in the month of March, 1833. In that answer Cozine stated that he was then, and always had been, willing and ready to come to an account with the complainant, or with any other person legally authorized to call upon him for that purpose, for the principal and interest due and owing to him on his said bonds and mortgages,.and was still willing to release to the complainant his right and title in the premises upon receiving payment.

1839.

Botts
*v.*
Cozine.

In other parts of his answer he avers, that he was the owner of the farm, and never admitted that any one had a right to call on him for such an account. The same ground is taken in the answer in the present suit.

Upon these proceedings it may be observed, that beyond a doubt Pelletrau could have closed with the offer, and had a decree upon that basis. It would have been difficult for Cozine to have revoked his offer in that suit. But Pelletrau persists in claiming the thorough relief sought by his bill, viz. the destruction of the mortgages, not to pay them.

He was alive on the 20th September, 1833, six months after Cozine's answer was filed. On that day he transferred his rights to the complainant. It does not appear when he died. But the present bill was filed in March, 1834. He was then alive. The answer was put in in September, 1834.

The present complainant could have proceeded with Pelletrau's suit. He could have made himself a party by a supplemental bill while Pelletrau was living, or by bill of supplement and revivor afterwards. Proper relief could probably have been given under that bill as framed ; at least by striking out the charge, which was merely matter of inference, that all the mortgages were fraudulent and void. Had he continued that suit, he might have availed himself of the proffer in the answer. But he had a right to choose whether to bring a bill of revivor and supplement, or to allow that suit to drop, and institute a new

one. (*Spencer* v. *Wray*, 1 *Vernon*, 463. *Anon*. 3 *Atk*. 485.) He has adopted the latter course.

The difference as to the point now considered is great. Had the other suit been continued, I do not see that the defendant could in any way have got clear of his offer. In a new answer to a new bill he may take any fresh ground he chooses, set forth any other facts, (liable to the refutation which his oath to the former answer will furnish) and clearly cannot be bound by any offer he has before made.

It would be signal injustice if he should not be at liberty to retract an offer made in a suit which his adversary was at liberty to abandon. There was no mutual assent to the proposition, and no agreement. I discharge the case therefore of this offer, and consider it upon the strict rights of the parties.

With respect to the allegation that Cozine induced Botts to purchase of Pelletrau by promises to sell, Wyckoff says that it is his impression that Botts had purchased of Pelletrau, before any conversation he heard between the parties took place. Other evidence appears, however, to fix the negotiations as having taken place in the spring of 1833, and the transfer from Pelletrau to Botts is dated 20th September, 1833. I find no testimony showing any contract with Pelletrau prior to this date. Now as before observed, the personal transactions between Botts and Cozine had long before terminated. The interview at Drew's house, and the omission to meet at Wyckoff's office, terminated them. If Botts chose to rely upon the unauthorized engagement of Wyckoff, it has been his misfortune, but forms no ground for the interference of this court.

If, therefore, the case rested here, I should have had no hesitation in dismissing the bill.

II. But the other branch of the cause involves questions of considerable difficulty.

[The Assistant Vice-Chancellor proceeded to state the facts of the case and some views upon this point. He

however directed a re-argument, as it had been but slightly touched upon by counsel. The case upon this branch was re-argued on the 22d and 23d July.]

THE ASSISTANT VICE-CHANCELLOR :—The point upon which I wished to hear counsel further, was that first noticed by me in my opinion, viz. the alleged fraud between Moore and Colden, in the transfer of the contract—the rights against Colden, if such transaction was fraudulent—and how far Cozine could be affected by it; involving chiefly the question of redemption.

The facts are these : The bill states an agreement by which one Pelletrau was to advance to Colden a sum of money to purchase the Union Race Course ; that he did advance it, and was to have a lien upon the premises. There is also an allegation that Pelletrau advanced a part of the deposite of $500 paid for the premises in question, which adjoined the race course. It is denied in the answer that Cozine knew of the $500 being Pelletrau's money. There is no proof to confute this denial. It must be inferred that it was Colden's money, as the contract recites it was paid by him, and the answer states the same fact. No equity can then arise upon the ground of an advance by Pelletrau. Whatever equity exists on this branch of the case must arise under the judgment obtained by Burr against Colden.

On the 12th of February, 1829, an agreement between Colden and Cozine is entered into for the purchase of the property. $500 was paid down, and the contract was to be completed on the 1st day of April, 1830. Cozine agrees to use the farm in a husband-like manner until that time, $1,500 was to be paid on the 1st of April, and $6,000 to be secured by bond and mortgage. The $500 then paid was to be taken as part of the purchase money, to be forfeited upon the failure of Colden to fulfil the bargain.

It is admitted in the answer that Colden, on the 5th of August, 1829, conveyed the race course adjoining the farm in question to C. C. Moore, and it is admitted by the counsel for the complainant, that on the same day he as-

Botts
v.
Cozine.

signed his interest in the contract with Cozine to Moore. On the 12th of August, 1829, a judgment was recovered by Aaron Burr against Colden. This was upon a bond or warrant of attorney to confess judgment, dated the 8th of August, 1829.

On the 20th of March, 1830, Colden gives a written notice to Cozine of his having assigned the contract to Moore. It is dated at Troy, and was received in the latter part of the month.

On the 1st day of April, 1830, a conveyance was executed by Cozine to Moore of the farm in question. The deed was tendered, and payment of the $1,500 required, with the bond and mortgage for the balance. The money was not ready, and the deed was lodged with Wyckoff as an escrow.

On the 2d of April, 1830, a lease was executed by Cozine to Moore, reciting the failure to complete the contract; the payment of $400 by Moore to Cozine on that day, and empowering Moore to enter into and hold possession until the 1st of June ensuing. This lease was afterwards extended to the 6th of July. The defendant denies that possession was taken by Colden after this lease was made. He says it was taken and held by Moore.

On the 15th of July, 1830, the terms were fulfilled, and the deed from Cozine to Moore delivered.

The defendant avers, that so far as he knows the money paid was paid by Moore on his own behalf.

Cozine, in completing this sale, received from Moore two bonds dated 1st of April, 1830, one for $1,000, and the other for $5,000 secured by mortgage. On the 1st of June, 1830, Moore and Colden joined in a bond to Freelinghuysen and Burger for $5,500, and Moore executed as security a mortgage upon the premises.

It is alleged that this bond was actually executed on the 15th July, and antedated the 1st of June. Cozine avers his ignorance of this matter. The Cozine mortgage had, however, an admitted legal priority over this to Freelinghuysen.

On the 14th September, 1830, a *fi. fa.* was issued upon

the judgment in favor of Burr against Colden. Under this the premises were sold on the 29th April, 1831, to Pelletrau for $50. He received the sheriff's certificate and on the 30th July, 1832, his deed. Under proceedings against Colden, Pelletrau was put in possession of the premises by the verdict of a jury about the 8th of September, 1832. On the 15th of September, 1832, an assignment of the judgment was made by Burr to Pelletrau, which is now held by the complainant.

In the month of December, 1830, a bill of foreclosure was filed upon the Freelinghuysen mortgage, making Cozine a party as first mortgagee; and a decree of sale was obtained on the 1st of May, 1831. A sale took place on the 6th of October, 1832. The master's deed was delivered the 10th of November, and his report filed the 24th of that month.

At that sale a notice was read that Pelletrau, by virtue of an agreement with Colden, and by force of a judgment in the supreme court against him, under which a sale had taken place, and he became the purchaser, claimed the fee of the premises, and was in possession.

On the 8th day of October, 1832, Pelletrau filed a bill in this court making Cozine, Moore, Freelinghuysen and Burger parties, seeking to set aside and vacate the decree of May, 1831, and to redeem the mortgages.

I shall first dispose of a point strongly pressed by counsel. It is urged that the agreement to extend the time for the fulfilment of the contract was void; that there was no consideration for it; and hence, the old contract with Colden assigned to Moore being terminated, the court can only look to the conveyance of Cozine to Moore as the origin of the relation of the parties and their rights.

Assuming that the rule requiring a consideration to be shown for an agreement to extend the time of performance of a contract applies to this case, it is a sufficient answer, that in the authorities cited, the want of such consideration has been set up as a defence against a suit upon the contract. (*Miller* v. *Holbrook*, 1 *Wendell*, 317. *Delacroix* v. *Buckley*, 13 *Wendell*, 71.) But where the party

agrees to extend the time, and at the end of the extended time performs the contract, it cannot be, that a court may not treat the fulfilment as relating to the original contract, and test the rights of parties as if such contract had been performed to the day.

It appears to me very clear, that the original contract was continued in force and was fulfilled by the deed delivered in July.

The question of fraud is next to be examined. It appears that the judgment was by confession, and the bond to confess is dated the 8th of August, 1829. The judgment was docketted the 12th of August. The assignment of the contract was on the 5th of August.

The question then is, whether, for the purpose of testing the point of fraud, the judgment creditor must not be taken as a subsequent, not a prior creditor.

There is not the slightest evidence of the time of contracting the debt. In *Saunders* v. ———, (*Holt's Rep.* 398,) it was held, that if a judgment was upon a point tried, then the party need not prove the consideration, but it shall be intended good ; but if it be a judgment by confession, he ought to prove it to be for a just debt, otherwise it shall not overthrow the sale, though it be fraudulent. In *Hindes' lessees* v. *Longworth*, (11 *Wheaton*, 199,) Justice Thompson, delivering the opinion of the court, adverts to the rule that a voluntary deed is void only as to antecedent, and not subsequent creditors, unless made with a fraudulent intent, and adds : " But copies of the accounts " upon which the judgments were founded were spread " upon record, by which it appears that the cause of action " arose before the date of the deed."

I consider the law as to subsequent creditors to be, that *prima facie*, a voluntary conveyance is not fraudulent as to them; but it may be proven to be so by other circumstances, as if made with a view to future indebtedness : And if there are prior creditors against whom it is void, subsequent ones may be let in. (*Sexton* v. *Wheaton*, 8 *Wheaton*, 229. *Ily* v. *Weswanger*, 1 *McCord's Ch.* 521. *Reade* v. *Livingston*, 2 *Johns. C. R.* 501. *Richardson*

v. *Smallwood, Jacob's Rep.* 552.)   Whether there must be
prior creditors assailing the conveyance, or proof of there
being prior creditors, will do, is not clearly settled.

In the present case, there is no evidence of a single debt
owing by Colden at the time of the assignment.   There
is an allegation of insolvency, not admitted by the answer,
and no proof whatever relating to it, except that in the
stipulation it is agreed that Colden's insolvent papers may
be produced in evidence.   When he became insolvent,
does not appear.

As to possession, it is alleged in the bill that Colden ob-
tained it.   This is denied in the answer, and it is averred
that Moore took possession.   At the date of the judgment,
the possession was in Cozine.   He continued possessed
until the lease in April, 1830.   Under that, Moore took
possession.   Wyckoff says Cozine sold the farm to Moore,
who took possession, and put it out in shares, and after-
wards Colden came.   Moore was a single man, and part
of the time was in Colden's family on the place.   Colden
is found in possession in September, 1832, when the pro-
ceedings were had before the jury.   But it is not shown
that Colden was in possession when the *fi. fa.* issued in
September, 1830, or when the sale took place in April,
1831.   The jury, in 1832, found him in possession, and
against him the execution had issued.   This brought the
case within the statute.   The affidavit necessary to form
a traverse, must have denied the facts upon which the
summons issued, or some of them.

Thus vague and unsatisfactory is this point of possession
upon the evidence : and then upon the question of fraud,
instead of being very clear, as it would have been if the
debt had previously existed, it would be very difficult
upon the testimony before the court, to pronounce the as-
signment fraudulent.

But there is a view of the cause suggested upon the full
argument it has now received, which appears to me de-
cisive, even assuming the transfer of the contract to have
been void.

At the date of the judgment in August, 1829, if the as-

1839.

Botts
v.
Cozine.

signment was a nullity, Colden yet remained entitled to the benefit of the contract. But that was not such an interest as was bound by a judgment, or could have been sold under an execution against him. (*Bogert* v. *Perry*, 17 *Johns. Rep.* 356. *Talbot* v. *Chambertin*, 3 *Paige*, 220.)

The lease however given to Moore, must, on the supposition of fraud, be treated as for the use of Colden, and Moore's possession that of Colden. The case of *Jackson* v. *Scott*, (18 *Johns. Rep.* 94,) is precisely in point. There was actual possession by the fraudulent assignee, which was held to be the possession of the assignor.

Here then was a possession coupled with an interest in the land, the subject of a sale under an execution before the Revised Statutes. (*Jackson* v. *Parker*, 9 *Cowen*, 80.) But before the *fi. fa.* issued, the deed to Moore had been delivered, and the mortgages taken back. If that deed had not been delivered previously, nor the mortgages executed, the doubt of the chancellor in the case of *Talbot* v. *Chambertin*, (3 *Paige*,) as to the operation of the 4th section of the act, would have applied. But when the *fi. fa.* issued, and the sale was made, the deed had been delivered to Moore. Was there then such an interest in Colden as could be sold upon an execution? If he was in possession it could have been, whether there was fraud or not. If not in possession, the question is very different. There never had been a title in Colden. Suppose all the instruments pronounced void, either Colden is to be decreed reinstated in his former situation, or Moore is to be held as his trustee. But it would be impossible to hold him such consistently with the settled rules of law.

The voluntary assignment here was clearly good against Colden and between the parties. It vested all Colden's rights in Moore, subject to the claims of creditors. Where courts of law have interfered, there was originally a leviable interest in the debtor, and upon an intermediate conveyance being held void, that interest revived. Here there was no such leviable interest. The right to the contract was absolutely divested from Colden. Moore gets the deed as the assignee of that right.

Even under the former statute of uses, (1 *R. L.* 74,) I apprehend this was not the subject of execution. It was not a fraudulent and covenous trust, in which the *cestui que trust* has the whole beneficial interest. (*Bogert v. Perry*, 1 *Johns. C. R.* 56.) Nor does the present statute appear to apply. (2 *R. S.* 291, § 26.) No possession is proven to have been held by Colden on the day of the sale. No trust estate appears to be created for Colden.

I conclude that this right of Colden, (assuming the transfer void as against creditors,) was not the subject of an execution at law, and that relief could be given in equity, and there alone. Hence, no new rights are acquired by virtue of the sale and sheriff's deed. The equities are to depend upon the judgment now held by the complainant.

Moore gave his mortgages upon the purchase to Cozine, and afterwards the mortgage to Freelinghuysen. A decree of sale was obtained upon this mortgage on the 1st May, 1831. Cozine, as prior mortgagee, was a party to the suit. On the 6th October, 1832, the sale took place, and the master's deed was delivered on the 10th November. The sale upon the execution took place on the 29th of April, 1831.

Cozine became the purchaser of the premises, at the sale under the decree. By the master's deed, he acquired all the estate which would have vested in the mortgagee, had the equity of redemption been foreclosed. He got the title of mortgagor and mortgagee, both under the Freelinghuysen mortgage and his own. (2 *R. S.* 119, § 158.) The title of Moore, then, vested in him. Was that title subject to the right of Colden's creditors, to take the property, paying the mortgages? Certainly not, unless a judicial sale under an execution was available against Moore's rights, which I think it could not be. Moore's title was subject to the rights of Colden's creditors, to have satisfaction of their demands out of the property. That right may, in its practical result, be widely different from the other. If there was no other debt than the one held

by the complainant of $735, the defendant could be sub-
jected to that alone.

It is the result of these views, that the only proper bill
would be one seeking to subject the premises to payment
of the judgment.   Upon such a bill, the question of fraud
would properly arise, as also the question whether Cozine
had such notice of it as will deprive him of the defence of
a *bona fide* purchase.   The present bill is not framed for
such a purpose, and if it were, the allegation of fraud is
not so satisfactorily made out as to justify my decreeing
upon that ground.

The bill must be dismissed, each party paying his own
costs.