## REYNOLDS *vs.* THE DUNKIRK AND STATE LINE RAILROAD COMPANY.

No action will lie to recover the price of land sold, where no written contract, on the subject, has been entered into between the parties, subscribed by the vendor, and assented to or accepted by the purchaser.

Thus where parol negotiations for the sale and purchase of land, were had, but the parties did not come to any agreement as to the price; the owner fixing his price, and the agent of the purchasers saying that they would be obliged to pay it, if the owner insisted on it; and he paid to the owner $150 on account of the land, and the purchasers took possession; *Held*, that an action could not be maintained for the price of the land.

And the clerk of the purchasers' agent having called upon the owner of the land, a few days after the payment of the $150, and, without any authority to do so, taken a receipt from the owner, as follows: " Received of H. A. R. $150, to apply on land damages for D. and S. L. Railroad crossing through my farm in P.  Before I convey the same the company are to pay

me $1850, in all $2000," which receipt was never accepted by, or brought to the knowledge of the railroad company or of its agent; *Held,* that the company was not bound by such receipt.

Where a complaint sets up an agreement for the sale and purchase of land, which is denied in the answer, the plaintiff, to sustain his complaint, can only prove the agreement by evidence which shows a legal, valid agreement. Consequently evidence of a parol agreement is inadmissible.

ACTION to recover the price of land sold. The road of the defendants was located across the farm of the plaintiff, and in February, 1851, the president of the railroad company, who had authority to negotiate for, and purchase, the right of way, applied to the plaintiff to purchase the land necessary for the road across his farm. The plaintiff asked $2000 for the right of way. The president objected to this price, but told the plaintiff that the railroad company must have the land and must go upon it, and if the plaintiff insisted upon that sum he must have it, but he did not think the plaintiff would insist upon it. Two or three days after this there was another interview. The defendant still insisted upon the price of $2000. No agreement was made; but a few days after this the president paid to the plaintiff $150 to apply on land damages, still hoping to get the land for less than $2000. The contractors went on the land and commenced grading the road. Within a few days the president having forgotten the amount he had paid the plaintiff, directed one Clark, his clerk, to call upon the plaintiff and ascertain the amount. Clark called upon the plaintiff, ascertained the amount and took a receipt thus: "Received of Hanson A. Risley one hundred and fifty dollars, to apply on land damages for Dunkirk and State Line Railroad crossing through my farm in Pomfret. Before I convey the same, the company are to pay me eighteen hundred and fifty dollars, in all $2000. Pomfret, February 24, 1851." Signed by the plaintiff. Clark put this paper with the papers of the company, not however with the receipts: he did not inform the president that he had taken the receipt. He subsequently took the paper and put it with his own; and he testified that he did this because he knew he had no right to take it, and he stated that he never had any authority to take the

receipt, and that he did not inform Risley, the president, of it, until after this suit was commenced. The defendants' contractors constructed the road across the plaintiff's farm, commencing their work in February, 1851, and finishing in August or Sept. following, for the Buffalo and State Line Railroad Company, and the road had ever since been used by the latter company. The plaintiff prepared a deed of the premises, dated June 27, 1851, signed, sealed and acknowledged it, and tendered it to the president of the defendants, who refused to receive it. Most of the evidence was given under objections and exceptions. The court was requested by the defendants' counsel to charge divers propositions to the jury, not necessary to be here specified. The court charged the jury, that if they believed from the evidence that the plaintiff told the agent Risley that he could have the land for $2000 and nothing less, and the railroad company (without change in those terms) went onto the land, and commenced the construction of its road, and still held it, that constituted a valid contract; that in case they believed the contract was proven substantially as laid in the complaint, they would find for the plaintiff the full contract price, less the $150 paid. The defendants' counsel excepted to that part of the charge touching the amount of damages. Verdict $1948.71. The defendants now moved for a new trial, upon exceptions.

*M. Burwell*, for the plaintiff.

*D. Tillinghast*, for the defendant.

*By the Court*, MARVIN, P. J. No written contract was ever entered into between the parties, touching the sale and purchase of the land. Parol negotiations were had, but the parties did not come to any agreement as to the price. The plaintiff fixed his price, and the agent of the defendants said that they would be obliged to pay it, if he would take no less, and paid to the plaintiff $150 on account of the land, and took possession of it. The plaintiff subsequently tendered a deed. This is stating the case as strongly for the plaintiff as the facts will justify.

Assuming that the evidence was sufficient to justify the jury in finding an agreement implied by law, by which the plaintiff was to sell and convey, and the defendants to purchase, and pay the $2000, can this action be sustained? The agreement to purchase and pay $2000 can only be inferred from the facts that the plaintiff's price was $2000, and that the defendants paid the $150 and entered upon the land: and so the judge put the case to the jury

This action cannot be maintained. By the statute every contract for the sale of any lands, or any interest in lands, is void, unless the contract or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the sale is to be made. (2 *R. S.* 135, § 8.) The plaintiff insists that there was a note in writing of the contract, subscribed by him, and that as he was the party making the sale, he and the defendants were bound, and that he can maintain the action to recover the price. It is not necessary to consider whether an action will lie against the vendee to recover the price of real estate as specified in an agreement signed by the vendor only and accepted by the vendee; as in this case there was no such agreement. It is not necessary to analyze the paper called a receipt, signed by the plaintiff, to ascertain whether it is a sufficient note or memorandum of a sale, for the simple reason that the defendants never accepted the paper, or assented to its terms. The president of the defendants paid $150 "to apply on land damages," and his clerk, a few days afterwards, called upon the plaintiff and took the receipt or instrument signed by the plaintiff, without any authority to make any contract, or to accept of any contract signed by the plaintiff. The defendants never accepted the written instrument, and knew nothing of it. The plaintiff might as well have drawn up a formal contract of sale, subscribed it, and deposited it with his own papers, and then tendered a deed and instituted his action. There must be a contract between the parties, and it must be subscribed by the party making the sale, in order to bind him, and the vendee must assent to it, or accept it; and until this appears it is quite unnecessary to consider whether an action

In the matter of widening Wall-street.

will lie against him. The court erred in admitting evidence of the verbal agreement. In the complaint an agreement for the sale and purchase was stated. This was denied in the answer, and the plaintiff, to sustain his complaint, could only prove the agreement by evidence which showed a legal valid agreement. (4 *Barb.* 449. 3 *Paige*, 478. 10 *Id.* 524.) This evidence was objected to, and an exception taken to its admission. The whole case was put to the jury upon a proposition excluding the written instrument signed by the plaintiff and delivered to Clark.

There must be a new trial; costs to abide the event.

[ERIE GENERAL TERM, January 23, 1854. *Marvin, Bowen* and *Greene,* Justices.]