SUBER v. RICHARDS.

1. STATUTE OF FRAUDS—PLEADING.—Can benefit of statute of frauds
   as applicable to contracts in relation to lands be obtained by defend-
   ant without pleading it?

2. IBID.—EVIDENCE—PAROL.—Where a sale of lands has been made
   under a consent order in a proceeding in the probate court to sell
   lands of a decedent in aid of assets before judgment on merits,
   purchaser put in possession under sheriff's deed and part of pur-
   chase money paid, statute of frauds do not debar parol evidence
   tending to establish the agreement under which the consent order
   and sale were made.

3. LIMITATION OF ACTIONS—NEW PROMISE—JURY—EVIDENCE—PAROL.—
   LETTER here held to be a sufficient promise in writing to go to the
   jury as tending to show a new promise to pay a debt previously
   barred, and parol evidence properly admitted to show the debt
   referred to and the amount of it.

4. INTEREST may be collected on debt from date first due, where the
   original promise is barred, but debt acknowledged by new promise
   in writing.

Before BUCHANAN, J., Newberry, February, 1900.  Af-
firmed.

Action for balance due on purchase money of land by
Leila H. Suber against J. Berry Richards, administrator of
Jno. C. Richards.  From judgment for plaintiff, defendant
appeals.

*Messrs. Munro, Duncan & Sanders* and *O. L. Schumpert,*
for appellant, cite: *No such performance as would take the
case out of the statute:* 27 S. C., 621, 363; 21 S. C., 492.
*Letter is insufficient to take it out of statute:* 27 S. C., 363,
621; 33 S. C., 382; 36 S. C., 549.  *Letter does not contain
sufficient elements of new promise to revive a barred debt:*
13 Ency., 1 ed., 756-7; 24 Am. R., 187; 51 Am. St. R., 744;
58 Am. St. R., 747; 55 Miss., 148; 56 Miss., 18; 1 Pet.,
366; Dud., 322; 2 Strob., 352; Code, 133; 21 S. C., 600.
*Suit cannot be maintained on breach of parol contract to
purchase lands:* Rev. Stat., 2151; 9 Rich., 218.

*Messrs. Johnstone & Welch,* contra, cite: *The letter is sufficiently definite to go to the jury on the new promise to pay the barred debt:* 2 Bail., 278; 13 Ency., 1 ed., 757; 33 S. C., 310; 51 S. C., 139. *The statute of frauds do not apply, (a) because not pleaded:* 9 Ency. P. & P., 705-6 n. 1, 711 n. 1; 20 N. J. Eq., 198; 2 Sandf., ch. 143; 1 A. K. Marsh, 436; 34 Mo., 277; 45 Ia., 272; 46 Va., 151; 8 N. H., 9; 1 Bland., ch. 236; 2 Gilm., 614; 34 Ala., 129; 23 Ill., 39; 89 Ga., 473; 57 N. W. R., 800; 1 Idaho, 254; 107 N. C., 231; 53 Tex., 9; 12 W. Va., 143; 44 Mo. App., 255; 110 N. C., 423; 54 Mo. App., 249; 146 Ill., 460; 96 Ala., 130; 62 Hun., 153; 77 Me., 91; 56 Vt., 727; 58 Vt., 271, 290; 65 Ala., 309; *(b) this is an action for balance of purchase money of land sold, and not included in statute:* 59 S. C., 394; Brown on Stat. of Frauds, 5th ed., p. 349; 13 Ency., 1 ed., 758 (c) to 764 (g). *Quotation of a part of charge is not proper basis for an exception:* 59 S. C., 244; 57 S. C., 224; 40 S. C., 537; 17 S. C., 339; 52 S. C., 82. *Exception failing to point out any specific error should not be considered:* 30 S. C., 170; 43 S. C., 99; 51 S. C., 56. *Promise is sufficient to take the case out of the statute:* 51 S. C., 139. *As to interest:* Rev. Stat., 1392; 16 Ency., 2 ed., 1019 (c). *Defense of nudum pactum to be available must be pleaded:* 47 S. C., 181. *This Court will not review an order refusing a new trial unless it is based on an erroneous proposition of law:* 59 S. C., 268; 57 S. C., 427, *138, 280. *Interest continues until debt is paid:* 16 Ency., 2 ed., 1032, 1066; 91 Ill., 575. *By part performance the case is taken out of statute, if applicable:* 21 S. C., 491; 59 S. C., 394.

August 20, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. The action herein was upon the following complaint:

"I. That heretofore she sold to John C. Richards, to wit: in January of the year 1878, the interest that she had in the real estate of her late father, Berry Richards, at and for the

sum of $750. That thereafter, on the 6th of February, 1878, the said John C. Richards paid her on the said debt the sum of $200.

"II. That the defendant, J. Berry Richards, has been duly appointed the administrator of the estate of the said John C. Richards, who since the times hereinbefore mentioned, had died intestate.

"III. That no part of the balance of $550 left owing her, as above stated, has ever been paid, but is still due and owing to her.

"IV. That since the times hereinbefore mentioned, and within the last six years, she received from the said John C. Richards letters in which he acknowledged the validity of the debt herein sued on." (Demand for judgment.)

This complaint was amended informally on the trial by agreement, so as to specify the mode of sale referred in the first paragraph, as follows: "Heretofore sold, that is to say, she did so and so, judgment recovered and plaintiff was about to move to set aside judgment, and agreement was if they would refrain from interfering to set aside the judgment and allow the land to go to sale, and John C. Richards would purchase and pay the plaintiff so much." The answer was a general denial and a plea of the statute of limitations. The jury found a verdict for the plaintiff for $1,339.14, and the defendant now appeals from the judgment thereon.

The first question to be considered is as to the applicability of the statute of frauds, which is raised by exceptions to admission of testimony and exceptions to the charge, the Circuit Court holding that the statute was not applicable. It appears by the records of the probate court put in evidence, that Berry Richards, sr., died on the 26th day of March, 1865, testate, and that his widow, Elizabeth Richards, procured letters of administration with the will annexed in November, 1865. By this will the testator devised a tract of land consisting of about 600 acres, one-half to his said widow, Elizabeth, and the remaining half to his two daugh-

ters, Eliza T., who afterwards married James Lou Henderson, and Leila H., who afterwards married Jacob H. Suber. The will also directed that the estate be kept together until all his debts should be paid, and after that as long as his wife remained unmarried, or until his eldest daughter should marry or arrive at age. In endeavoring to carry out this direction of the will, the administratrix continued to farm the lands, and was assisted therein by John C. Richards, defendant's intestate, who made advances in supplies, &c. But the plan was not successful, the old debts were not paid, and new ones were contracted. In April, 1875, John C. Richards, who was the brother of Berry Richards, sr., commenced proceedings in the probate court for Newberry County, to sell said lands, in aid of assets, he claiming to be a large creditor of the estate. The testator's daughters, Eliza T. Henderson and Leila H. Suber, resisted said sale, denying the alleged indebtedness, pleading the statute of limitations, demanding a strict accounting by the administratrix, and charging collusion between the administratrix and John C. Richards and another to defraud the children of their rights under the will. On November the 11th, 1875, an order was made calling in creditors to establish their demands. On the 15th December, 1877, there was a consent order that the land described therein, being the 600 acre tract referred to above, be sold on the first Monday in January, 1878. The sale was made on the day named by the sheriff under said consent order, and John C. Richards became the purchaser at his bid of $2,500, and he received the sheriff's deed therefor, and went into possession. At that time the probate court had made no decree establishing claims against the estate and adjudging as to the necessity to sell the real estate in aid of assets. Such a judgment was not made until February 1, 1879. The sale was made pursuant to agreement of the parties under the following instrument:

"State of South Carolina, County of Newberry, Court of Probate. John C. Richards, individually and as survivor,

etc., plaintiff, against Elizabeth Richards, as administratrix with the will annexed, etc., and others, defendants. We, the undersigned, Elizabeth Richards, the widow and heretofore administratrix of the will of Berry Richards, deceased, and Eliza T. Henderson and Leila H. Suber, the daughters of the said deceased, and all three defendants in the above stated action, do hereby consent and request that his Honor, the judge of probate for the said county, shall order the lands described in the complaint in this action, of which the said Berry Richards died seized, to be sold at auction at Newberry Court House, in the said county and State, on the first Monday in January, A. D. 1878, or the first convenient salesday thereafter, on such terms as to the said judge may seem proper—the proceeds of such sale to be disposed of in such manner as the said court shall hereafter adjudge. And we desire that such said sale shall be made clear of all claim of dower or the rights of any of us under the will of the said Berry Richards, or under the laws of this State relating to inheritance. Eliza T. Henderson, Leila· H. Suber, E. Richards."

The parol testimony objected to tended to show that previous to said sale, the plaintiff agreed that the lands be sold upon John C. Richards agreeing to pay the plaintiff $750 for her interest therein, to be paid when she got ready to go to Texas, which she was then contemplating. Plaintiff moved to Texas on the 7th or 8th of February, 1878, and the day before going, John C. Richards paid plaintiff $200 of said sum and promised to send balance later. After this plaintiff introduced in evidence a letter written by John C. Richards to plaintiff (in response to a letter by the plaintiff to John C. Richards), which contained much irrelevant matter and is too long to insert in full. We extract therefrom the following, the letter being dated February 8, 1891: "I did not see much of Lizzie [meaning Elizabeth, the widow of Berry Richards, sr.]; she took up most of her time in Newberry consulting a lawyer, I have understood since. Berry told me a good deal about her mis-

sion to this county. She is certainly a wonderful woman, trying to stir up some more strife about the old place. It has already cost me three times as much as it is worth * * * The very idea of Tudie [meaning Elizabeth T. Henderson, sister of plaintiff, to whom, according to the parol testimony, he had also promised to pay $750 for her interest in the land,] talking about her interest in the land; she got enough out of me already to pay for the whole land * * * I am not afraid of them ever getting any more out of that old place. If they should go into a lawsuit, the lawyers will gobble it up, what they may get. * * * I am glad you had nothing to do with this foolishness of Lizzie * * * You have taken the right view of matters and you will never lose anything by it * * * I don't remember how much money I gave you when you left. I thought it was $300, but Lizzie said $200 the day I saw her at Maybinton. I am going to pay you the other. Do you remember what was said about this. I remember very distinctly what I said, but Berry tells me his mother has it all changed to suit her. Said I promised to give Tudie land, and ought to have done it in place of money and helping Jim Lou." We agree with the Circuit Court that the statute of frauds does not apply. In the first place, the statute of frauds is not available unless specially pleaded, and it was not pleaded in this case. It is true, that in the case of *Poag* v. *Sandifer,* 5 Rich. Eq., 170, it was held that to a bill to enforce an agreement in relation to land, the defendant need not plead the statute of frauds, if he deny the agreement in his answer. That decision, however, was made in 1852, under the former system of pleading. We think it accords better with the Code system, that the adverse party and the trial Court be advised by the pleadings whether the statute will be interposed as a bar to the action. A parol contract for the sale of land is not void at common law, nor does the statute make such contract void. The protection afforded by the statute is a personal privilege of the parties to the agreement, and may be waived by them. *Finley v. Moore,* 55 S. C., 198.

It is worthy of note that the cases cited in *Poag* v. *Sandifer,*
*supra,* from New York—2 Paige, 177; 3 Paige, 478—have
been overruled since the adoption of the Code, and that the
settled rule in that State is that the statute must be specially
pleaded. *Crane* v. *Powell,* 34 N. E. Rep., 913. The case
of *Groce* v. *Jenkins,* 28 S. C., 172, does not conflict with this
view, for the point there decided was merely that it is not
necessary to allege in the complaint that an agreement as to
lands is in writing, since such agreement will be presumed
to be in writing until the contrary appears. Nor does the
case of *Hillhouse* v. *Jennings,* 60 S. C., 373, present any
irreconcilable conflict with this view. In that case the com-
plaint alleged an oral agreement, and while the defendant
did not plead the statute in his answer, the Court regarded
his motion, under which defendant sought the bar of the
statute, as in effect an oral demurrer based upon the statute,
which was in reality pleading the statute under a demurrer.
It is proper practice to demur when the pleading states a
contract to be verbal, when the statute requires such contract
to be in writing. *Mendelsohn* v. *Banov,* 57 S. C., 150.
There is much conflict in the decisions on this subject, as
shown by the citations in 9 Ency. Pl. & Pr., 705, but the
better rule is stated to be that the party seeking the protec-
tion of the statute should plead it.

We might well rest the question here; but we will add
that, assuming that the objection under the statute is avail-
able without being pleaded, the case is taken out of the stat-
ute by performance of her part of the agreement by
the plaintiff, possession of the land by the defend-
ant's intestate, and part payment of the agreed price.
The sale when made by the probate court was not pursuant
to any judgment requiring such sale in aid of assets, but
under the written consent and request of the parties in inter-
est. Under such circumstances the deed of the sheriff to
the defendant's intestate was the stipulated conduit by which
the interest of the plaintiff in the land was to be conveyed to
the purchaser. If the purchaser's possession was taken

under the sheriff's deed, the deed depended upon the consent order, and was the method of conveyance agreed upon. The letter of John C. Richards to plaintiff shows that he recognized that he was still indebted to plaintiff upon an agreement in reference to the purchase of this land upon which he had made a payment of $200. This action, then, is not to enforce a parol executory agreement for the sale of land, but for the price claimed to be due upon an executed contract for the sale of land, consummated by a deed of conveyance to the purchaser. In such a case the statute does not apply. *Wood* v. *Gee,* 3 McC., 421.

We next notice the exceptions relating to the statute of limitations. The action was commenced on the 6th day of February, 1897, within six years from the date of the letter of February 8, 1891, which was relied on to show a new promise to pay the alleged original indebtedness of 1878. It is excepted that there was error in allowing the letter of February 8, 1891, in evidence, because said letter is not sufficiently definite and certain, in that it does not (1) state any amount due, or (2) when it was to be paid, or (3) for what the promise was made, or (4) whether it was a debt due to the plaintiff or not. Error is also assigned to the refusal of the motion for nonsuit, (1) because the original promise was shown to have been made in 1878 and was barred; (2) because the letter introduced in evidence does not contain a new promise, in that it does not state the amount due, nor refer to anything from which the amount can be computed. There are also exceptions to the modifications made by the Circuit Court in responding to certain requests to charge, as to which it will be sufficient to state the fourth and fifth requests to charge and the response of the trial Court thereto, as follows :

" '4. Where a debt is barred by the statute of limitations, and it is alleged that such debt has been revived by a new promise in writing, such new promise must be a clear and explicit promise to pay the particular debt sued on, or such an unqualified and unequivocal admission that the particular

debt sued on is still due as will imply a promise to pay such debt, otherwise such new promise will be insufficient to justify a recovery.' I cannot charge you that it must be in its terms so specific and so particular as to identify by name or by other circumstances or matters of description a particular agreement, but it is enough if it refers to and identifies an antecedent agreement so as to carry conviction to your mind that it was intended in the mind of the person who made it to be an acknowledgment of that particular debt and none other; and with that modification I charge you that.

" '5. Where a new promise is relied on to recover a debt which is barred by the statute of limitations, such new promise must be a clear and explicit promise to pay the debt sued on, or such an unqualified and unequivocal admission that this particular debt is still due as will imply a promise to pay such debt, otherwise such new promise will be insufficient to warrant a recovery of such debt.' Well, gentlemen, with what I have already charged you, I charge you that; I charge you that because I have practically charged that, or a modification of it, heretofore; and with that understanding, with that modification, I charge you that. The term there, 'explicit,' does not mean, as I have tried to indicate to you, that in its language, the renewal, the written instrument reviving it, continuing the contract, or rather, to be more accurate, barring the statute of limitations, must explicitly in its terms, in its language and in its words, refer to the contract. If it does refer to it so as to identify that contract heretofore made as the only contract heretofore, and as that contract alone and none other contract, then it would be enough."

The letter was properly admitted in evidence on proof that it was signed by the defendant's intestate and addressed to the plaintiff. It plainly referred to an indebtedness by defendant's intestate to the plaintiff upon which a payment of $200 was made when plaintiff "left," and contained an unqualified promise to pay "the other" or balance of that in-

26—61

debtedness. The rule laid down in *Lockhart* v. *Eaves,*
Dud., 321, and approved in *Robbins* v. *Farley,* 2 Strob., 352,
is that acknowledgment of promises to obviate the statute
of limitations are not sufficient unless they specify or plainly
refer to some particular cause of action. As we construe
this letter, it meets the requirement by plainly referring to a
particular indebtedness credited with $200, with an express
promise to pay the balance, and is a sufficient compliance
with sec. 131 of the Code to take that particular debt out of
the statute of limitations. The identity of the debt, which
defendant thus promised in writing to pay, with the debt
sued for, was a matter properly left to the jury—*Hill* v.
*Hill,* 51 S. C., 142; and for the purpose of such identifica-
tion, even though it involved proof of the amount of the
debt, oral evidence was admissible. The general rule is thus
stated in *Manchester* v. *Braedner,* 107 N. Y., 346; 1 Am.
St. Rep., 831. "It seems to be the general doctrine that the
writing, in order to constitute an acknowledgment, must
recognize an existing debt, and that it should contain
nothing inconsistent with an intention on the part of the
debtor to pay it. But oral evidence may be resorted to, as
in other cases of written instruments, in aid of the interpre-
tation. Consistently with this rule, it has been held that
oral evidence is admissible to identify the debt and its
amount, or to fix the date of the writing relied upon as an
acknowledgment when these circumstances are omitted.
*Kincaid* v. *Archibald,* 73 N. Y., 189; *Lechmere* v. *Fletcher,*
3 Tyrw., 450; *Bird* v. *Gammon,* 3 Bing. (N. C.), 883; or to
explain ambiguities, 1 Smith's Lead. Cases, 960, and cases
cited." The rulings and charge excepted to were consistent
with the views above stated, and the exceptions thereto must
be overruled.

We next notice the exceptions to the charge in reference
to interest. The Court instructed the jury: "If you find
that there was so much due at the time mentioned in the
complaint, and that the plaintiff has been kept out of
it ever since, and the amount was liquidated and

certain, that is to say, there was a set amount, then you may give plaintiff interest on it from the date it was due and ought to have been paid up to the time of the recovery, up to the time the complaint was served." The specifications of error are: (1) In leaving the jury free to allow interest from the date of the alleged original promise in 1878; whereas, it is respectfully submitted, the jury should have been instructed: (a) If there was a promise to pay money, interest could not be allowed, if it was uncertain when the money was to be paid. (b) If no time was specified when a debt is to be paid, then interest could not be allowed until after demand for payment was made; or else, (c) That no interest could be collected for a longer time than six years prior to the commencement of the action. Interest is for the detention of money due. Inasmuch as there was competent evidence tending to show that the debt sued for was due when plaintiff left Newberry for Texas, when the $200 were paid, which was the 7th or 8th of February, 1878, we see no error in the charge of which appellant could complain.

We have not deemed it necessary or useful to consider the numerous exceptions in detail. The foregoing views practically dispose of the appeal. All the exceptions are overruled.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY, *concurring in the result,* says: Before the adoption of the Code, the rule that unquestionably prevailed in this State was that it was not necessary that the question whether the agreement was void under the statute of frauds should be raised by the *pleadings.* *Givens* v. *Calder,* 2 DeS., 171; *Poag* v. *Sandifer,* 5 Rich. Eq., 170. The case of *Groce* v. *Jenkins,* 28 S. C., 172, shows that this rule is still of force. I cannot, therefore, concur in so much of the opinion of Mr. Justice Jones as holds that the statute of frauds is not available unless specially pleaded.

MR. JUSTICE POPE being disqualified by reason of having been an attorney in the original cause, did not sit.