## Case No. 13,018.

### SMITH v. BURNHAM.

[2 Sumn. 612.][1]

Circuit Court, D. Massachusetts. May Term, 1837.

PLEADING IN EQUITY—PROOFS—CHARGE IN BILL—EQUITY PRACTICE IN FEDERAL COURTS.

1. The confessions, conversations, and admissions of the defendant need not be expressly charged in a bill in equity, in order to entitle the plaintiff to use them in proof of facts charged, and in issue therein.

[Cited in Nesmith v. Calvert, Case No. 10,-123.]

2. The practice of the English court of chancery, and not that of the court of exchequer, forms the basis of the equity practice of the courts of the United States.

Bill in equity, wherein the plaintiff [Frederick Smith] asserted an agreement between himself and the defendant [Daniel Burnham] to become copartners in the business of purchasing and selling lands and lumber in the state of Maine, and the purchase, by the said defendant, of lands and lumber, in pursuance of this agreement, for which he has never accounted to the plaintiff, and praying an account thereof, and a conveyance to the plaintiff of his share of the property, which remained unsold. Admissions by the defendant of the asserted copartnership were alleged in the bill in the following terms: "During all the time aforesaid, as well as at divers other times, through all the negotiations aforesaid, as well as in many other negotiations in relation to the contract aforesaid, the said Daniel Burnham constantly spoke of the said interest in the said lands of the said Black, as belonging to the said copartnership, and spoke of, recognized, and treated your orator as having an equal and copartnership right therein." The particulars of the time, place, and circumstances of

[1] [Reported by Charles Sumner, Esq.]

the admissions were stated in the bill. Among the interrogatories, filed by the plaintiff, for the examination of witnesses, were several which related to the alleged admissions of the copartnership by the defendant. On petition of the defendant, these were referred to a master for impertinence, who, after looking into the interrogatories objected to, and the bill and answer, certified that the interrogatories were not impertinent or inadmissible. To this report of the master, an exception was filed by the defendant, as follows: "For that the said master has certified, that the interrogatories referred to, are not impertinent or inadmissible, whereas he ought to have certified, that the same are impertinent and inadmissible."

The exception was now argued by B. Rand for the defendant, and by B. R. Curtis for the plaintiff.

STORY, Circuit Justice. The main question arising out of this exception is, whether, where a fact is charged, and put in issue in a bill, the examinations of witnesses to the confessions, conversations and admissions of the defendant, are admissible to prove the fact, unless such confessions, conversations, and admissions are expressly charged in the bill, as evidence of such fact. The argument for the defendant is, that they are not; for unless they are so charged, the defendant has no opportunity given to deny them by his answer, or to explain them; and thus is liable to be taken by surprise.

The case of Hall v Maltby, 6 Price, 240, 258, 259, is relied on in support of the exception; and certainly, if the language of that decision is to be taken in its full latitude, it is directly in point. In that case there was a charge of a fraudulent withdrawal of tithable sheep from tithes; and Chief Baron Richards, at the hearing, rejected the evidence of conversations of the defendant, establishing the fact; because, though the fraudulent withdrawal was charged in the bill, the conversations were not. His language on this occasion was: "I, however, entirely lay out of this case all that the witness has sworn, as to the declaration of the defendant concerning the fraud, and his confessing, that it was his intention to defraud the tithe owner; and my reason is, because there is nothing of that kind stated in the bill; so that the defendant could have had no opportunity of answering or explaining it, and he could not, therefore, have been aware, that any such matter was intended to be proved; and, in cases of fraud, declarations of a fraudulent purpose are often the very gist of the case. He had no sort of intimation of it, so as to enable him to cross-examine the witness on that fact. I am the more anxious to state, that we are not now to be allowed to enter upon that part of the evidence in this case. there being no ground laid for it by the allegations in the bill: because I wish to have it make a due impression on those, who are

in the habit of drawing pleadings in equity, in order that they may take care, that that, which is the gist of the cause, should be stated on the record; for it is too much for a defendant to be overpowered by evidence, which he could have no idea, from any statement in the bill, would be brought forward at the hearing, when he might otherwise, perhaps, have been able, if he had been aware of it, to explain it to the satisfaction of the court. This, however, I am aware is a delicate matter for the consideration of the pleader, as it is often dangerous to reveal the evidence intended to be used. But the bill and answer have very great effect on the decision of every cause; and although we would wish to avoid prolixity, and all unnecessary matter, generally speaking; yet it is indispensably necessary to state a defendant's declaration of fraud on the record, if it is intended to be used against him on the evidence at the hearing. In this case, that declaration, not being mentioned in the pleadings, cannot be suffered to be given in evidence in the cause; for if that acknowledgment were proved to be true, there would be no necessity for any further proof on the subject. In the present case, however, I think the evidence of fraud is abundantly strong, without reference to the evidence of the defendant's declaration, which is not warranted by the pleadings. I am of opinion, under the circumstances, which appear by clear legitimate evidence, the fraud is here sufficiently apparent; but I must repeat, that although, generally speaking, it may not be necessary to state on the record declarations by the defendant; yet in a case, charging fraud, where such declarations are often the gist of the cause, great injustice would be done to the party, if evidence were received of such declarations, where they are not charged in the bill. In the case of Evans v. Bicknell, 6 Ves. 183, the lord chancellor, very soon after he came to the great seal, so determined, on occasion of an attempt to introduce evidence of this kind, without previous intimation to the party, against whom it was to be used, by alleging it in the bill. He has held the same opinion, I believe, ever since; and no man can differ from him in thinking, that such a thing cannot be done. For that reason, as I said before, I put this evidence entirely out of the question."

It is true, that in this case, there was a charge of fraud; and the chief baron seems to rely on that as important to his decision. And Lord Chancellor Hart, in Mulholland v. Hendrick, 1 Mol. 359, Beat. 277, in affirming the same doctrine, seems to have placed some reliance on the same fact, of its being a charge of fraud, considering fraud as an inference of law from facts, and not a mere fact. In other cases, however, he does not seem to rely on any such distinction. Indeed, it is very difficult to understand the ground of such a distinction. The facts to be established by such confessions, and conversations, and admissions, are not so much fraud in the abstract, as evidence conducing to establish it. If, upon a charge of fraud in a bill, stating that certain acts done were fraudulently done, evidence of confessions admitting the acts and the intent cannot be given in evidence, unless those confessions are also charged in the bill, as evidence of the fraud; it seems to me, that the principle of the rejection of the evidence must apply equally to all other cases of confessions to establish facts, which are to prove any other charge in a bill. Take the present case. The main object of the bill and of the interrogatories is, to establish a partnership in certain transactions between the plaintiff and defendant, out of which certain rights of the plaintiff have sprung, which he seeks to enforce by the bill. The confessions and admissions are not charged in the bill: but the partnership is. Now, partnership itself is not, in all cases, a mere matter of fact, but is often a compound of law and fact. And, I cannot see a single ground, upon which the evidence of confessions and admissions ought to be rejected in the case of a charge of fraud, which does not equally apply to the charge of partnership. In each case the evidence is, or may, be, equally a surprise upon the party; and in each of them he is equally prevented from giving, by his answer, such denials and explanations, as may materially affect the whole merits of the cause. It seems to me, then, that the doctrine, if it exists at all, must equally apply to all cases, where the fact charged, in respect to which the confessions, conversations, or admissions are offered, as proofs, constitutes the gist of the matter of the bill. And yet I do not understand, that such a doctrine, so universal, is anywhere established, unless it is so in Ireland by Lord Chancellor Hart, who has discussed the subject in a variety of cases, and seems to assert it in broad terms. He has expressly refused to apply it to cases, where written papers, letters, or documents, are relied on as proofs of general facts charged in the bill; although such papers. letters, and documents are not charged as proofs in the bill (Fitzgerald v. O'Flaherty, 1 Mol. 350); unless, indeed, those papers, &c. are relied on as confessions of the party, which he treats as an exception to the general rule of evidence. "The general rule" (said he on one occasion) "is, that all evidence, intended to be relied on at the hearing, should be founded on some allegation, distinctly put on record, of fact, which it is calculated to support." "It is a very old principle, to be found very clearly stated in Vernon, (Whaley v. Norton, 1 Vern. 483); but I must be greatly misread, if the evidence, and not only the fact to be proved by the evidence, must be put in issue, to entitle the evidence to be read." Fitzgerald v. O'Flaherty, 1 Mol. 351, 352. See, also, Houlditch v. Donegal, Id. 364; Farrel v. ———, Id. 363. He repeated the same remark with the same exception in Blacker v. Phepoe, Id. 357, 358.

The doctrine of Lord Chancellor Hart, to be deduced from all the cases decided by him,

seems to be this;—that, wherever confessions, conversations, or admissions of the defendant, either oral or written, are relied on in proof of any facts charged in the bill, they are inadmissible, unless such confessions, conversations or admissions are charged in the bill; because they operate as a surprise upon the party, and he is deprived of any opportunity to deny or explain them in his answer. He admits the general rule to be the other way; and insists upon this as an exception to it.

The question, then, really is, whether the exception, either in its general form, as asserted by Lord Chancellor Hart, or in its qualified form, as asserted by Lord Chief Baron Richards, has a real foundation in equity jurisprudence. Both of these learned judges rely on the case of Evans v. Bicknell, 6 Ves. 174, in which they were counsel on opposite sides, to support their doctrine. Lord Chief Baron Richards says, that it was so decided in that case. See 6 Price, 260. Lord Chancellor Hart does not agree to that; but admits, that he drew the bill in that case with a full knowledge of the exception. See 1 Mol. 360, 361. It is very certain, that the point was not decided in the case of Evans v. Bicknell, if we are to trust to the printed report in 6 Ves. 174. And, upon the state of the pleadings, I do not see, how the point could have arisen. The bill, in that case, charged, that Bicknell "has admitted or declared, upon different occasions, and in the hearing of different persons, and that Stansell, at the time of the application, informed him, he wanted them (the deeds) for the purpose of obtaining credit; and he made such declaration or admission in the presence of the plaintiff, and Hawkins, the solicitor, and the defendant Taylor." The answer alleged, that the defendant "never did admit or declare, in the presence of Hawkins, Taylor, or any other person, nor did Stansell, when he applied for the deeds, or at any time, inform him, that he wanted to obtain money by way of mortgage or otherwise; but he admitted, Stansell did inform him he wanted the use of the title deeds merely to show or convince some person or persons, with whom he was in the habit of taking credit in the way of trade, that he and his wife were legally in possession of the rents and profits of the freehold and leasehold estates." The defendant, Taylor, was also examined as a witness, who stated, "that E. Evans and Hawkins (the attorney) came to him about the mortgage, and they and the deponent went to Bicknell, who strenuously denied, that he had delivered the deeds for the purpose of a mortgage; but at length, after much altercation and abusive language between him and Hawkins, informed them, that Stansell had desired him to lend him the title deeds, &c., to show to some person, who would credit him with goods in his trade to the amount of £40 or £50, upon seeing them; and the person to lend the money was to receive two years' rents; that he promised to return them in an hour, that he (Bicknell) had lent them; and had often sent, and could never get

them; and he denied, that he knew of the mortgage." It is observable, that the testimony here stated, contains some particularities as to the confessions of Bicknell, not contained in his answer; which particularities were not charged in the bill, and, therefore, not met in the answer. And the question was, not whether the evidence on this account ought to be rejected; but whether the omission in the bill ought to prejudice the defence set up by the defendant in his answer. It was to this view, that Lord Eldon addressed himself in the passages cited at the bar, in support of the argument, that more credit ought to be given to the defendant's answer than to the assertion of one witness, Taylor. "The bill (said he) being amended, and this being a case, in which the court ought to be particularly sure of the ground, on which it decides upon a fact, equivocal, or a declaration more or less according to the recollection of the precise terms by the witness, it is not unfair to observe, that probably before the amendment the plaintiff must have collected the account of it from Taylor; if he was the only person from whom she could have got the account; and the bill was then amended, in order to introduce the allegation as to Stansell's representation to Bicknell. Taylor does not recollect half as much in his answer, as in his evidence; and that is a very material circumstance, when the defendant is to be charged upon this ground; that more credit is to be given to the defendant's denial than to the assertion of one witness. It ought to be with reasonable certainty put in issue by the allegations of the bill. Taylor's account is not necessarily inconsistent. I do not say it is necessarily consistent, with Bicknell's. But it must be necessarily inconsistent, and more credible than the denial by the answer, before the decree can be made. He says, the purpose, as represented by Bicknell, was to show the deeds to some person, who would let him have credit in the way of his trade; and in the same conversation they were to be brought back in an hour. That negatives the very idea, that the estate was to be pledged. That mode of representing the conversation, instead of opposing, confirms Bicknell's answer. Upon his answer, therefore, and Taylor's evidence, there is not that sort of contradiction, that entitles the plaintiff to a decree against Bicknell on the ground of fraud. The circumstance of Taylor's examination shows the danger; for Bicknell had no opportunity of answering the farther evidence of express charge. It is very extraordinary to say, this court will not act upon the evidence of one witness contradicting the answer, and yet it will act upon that evidence, in order to charge the defendant in a circumstance, to which he has had no opportunity of stating himself. That therefore could only be a ground for inquiry." He afterwards added, "I hesitate also in giving Taylor credit for his evidence, carried in the depositions so much farther than the answer; and the bill containing no allegation to give Bicknell the benefit of his answer; with the conversation,

that the money was to be repaid by two years' rents; and the circumstance, that in the security the rents are really devoted to the principal, as well as the interest." So that, it is apparent, that Lord Eldon's remarks were addressed to the comparative credibility of the answer of the defendant, and the testimony of Taylor as to conversations and circumstances not alluded to in the bill; and not to the admissibility of the evidence itself.

The case of Evans v. Bicknell, 6 Ves. 174, 189, 192, does not sustain the doctrine of Lord Chief Baron Richards, or of Lord Chancellor Hart; and I have not been able to find a single decision in the English court of chancery, which does sustain it. And yet, if the doctrine had been well established, it seems to me almost impossible that it should not be found clearly stated in the books, as it must be a case of so frequent recurrence in practice. On the contrary, it seems to me, that the case of Earle v. Pickin, 1 Russ. & M. 547, shows, that no such rule is established in chancery. There, the question in the cause turned upon the fact of notice of a settlement, which was charged in the bill. But the names of the witnesses, and the particular facts of notice, and the admissions and conversations with the defendant, which amounted to notice, were not stated in the bill, so that the defendant had no opportunity to meet the testimony. The counsel for the defendant objected to the admission of this testimony on this account, insisting, that the bill ought to have charged the particular facts of notice, and the conversations stated in the evidence, and the defendant might then have disproved them. As to the admissions of notice, they insisted, that the rule of pleading was, that a party could not rely on an admission made by his adversary, not appearing in the pleadings, unless it were put in issue, so that he, whom it sought to bind by it, might either disprove it, or explain it. For this defect, the counsel insisted, that an inquiry ought to be directed before the master, so as to give the defendant an opportunity of meeting a case, which had been opened against him by surprise. The counsel for the plaintiff denied, that any such rules of pleading existed, as those, on which the argument for the defendant was founded; and resisted the inquiry. The master of the rolls directed the inquiry respecting notice before the master upon the ground, that neither the names of the witnesses, nor the particular facts of notice were stated in the bill. Upon appeal, the lord chancellor (Lord Lyndhurst) thought the direction of the master of the rolls at first right, and afterwards varied the order by directing an issue as to the supposed time of the conversations.

Now, upon this case it is material to remark, that, if there existed any such rule, as is supposed, the evidence of the admissions and conversations ought to have been rejected, and then there would have been an end of the cause; whereas the counsel, who rais-ed the objection, only asked for a further inquiry before the master. The counsel for the plaintiff utterly denied the existence of any such rule. And no authority on either side was quoted for the doctrine. If the master of the rolls, or the lord chancellor, had recognised the existence of such a rule, the order made by each of them would have been impertinent and incorrect. So that it seems to me very clear, that no such rule has been established in chancery.

If then, in the absence of authority in favor of the rule, we look to principle, it seems to me impossible, that it can be supported. There is no pretence to say, that in general it is true, that, as to the facts to be put in issue, it is necessary, not only to charge these facts in the bill, but also to state in the bill the materials of proof and testimony, by means of which these facts are to be supported. Lord Chancellor Hart has admitted this in the fullest manner, saying: "The evidence of facts, whether documentary or not, need not be put in issue; evidence of confessions, whether documentary or not, must." Fitzgerald v. O'Flaherty, 1 Mol. 352. Why admissions or conversations, as materials of proof, should be exceptions from the general practice, I profess myself wholly unable to comprehend. Other papers and testimony may be quite as much matters of surprise, as documents or testimony, as conversations or admissions; and the circumstance, that conversations or admissions are more easily manufactured than other proofs, furnishes no ground against the competency of such evidence, but only against its cogency as satisfactory proof.

Two grounds are relied on to support the exception. The first is, that the defendant may not be taken by surprise, and, (as it has been said) admitted out of his estate; but may have an opportunity to cross-examine the witnesses. The second is, that the defendant may have an opportunity, in his answer, fully to deny, or to explain the supposed admissions or conversations. Now, the former ground is wholly inapplicable to our practice, where the interrogatories and cross interrogatories put to every witness are fully known to both parties; and, indeed, in the laxity of our practice, where the answers of the witness are usually as well known to both parties. So that there is no general ground for imputing surprise. Indeed, in this very case, it is admitted by the learned counsel for the defendant, that there has not been any surprise. The second ground is applicable here. But, then, proofs, documentary or otherwise, may be offered as evidence of facts charged in the bill, as well as admissions and conversations, which it might be equally important for the defendant to have an opportunity to deny or to explain, in order to support his defence. Yet the evidence of such facts is not, therefore, inadmissible. So that the exception is not coextensive with the supposed mischief.

But it seems to me, that the exception would itself be introductive of much of the mischief, against which the practice of the English court of chancery is designed to guard suitors. In general, the testimony to be given by witnesses in a cause at issue in chancery, is studiously concealed until after publication is formally authorized by the court. The witnesses are examined in secret upon interrogatories not previously made known to the other party. The object of this course is to prevent the fabrication of new evidence to meet the exigencies of the cause, and to take away the temptations to tamper with the witnesses. Now, if the exception be well founded, it will (as has been strongly pressed by counsel) afford great opportunities and great temptations to tamper with witnesses, who are known to be called to testify to particular admissions and conversations. So that it may well be doubted, whether, consistently with the avowed objects of the English doctrines on this subject, such an exception could be safely introduced into the English chancery. There is another difficulty in admitting the exception; and that is, that there is no reciprocity in it; for while the defendant in a suit would have the full benefit of it, the plaintiff would have none, since his own admissions and conversations might be used, as rebutting evidence, against his claims asserted in the bill, although they were not specifically referred to in the answer.

Several cases have been referred to, both in the English and the American reports, in which the case has been mainly decided upon the admissions or conversations of the parties, which were not specifically stated in the bill, or other pleadings. I have examined those cases; and although it is not positively certain, that there were not, in any instance, any such admissions or conversations charged in the bill; yet there is the strongest reason to believe, that such was the fact; and no comment of the counsel or of the court would lead us to the supposition, that there was imagined to be any irregularity in the evidence. I allude to the cases of Lench v. Lench, 10 Ves. 511; Besant v. Richards. 1 Tamlyn, 509; Neathway v. Ham, Id. 316; Nerot v. Burnand, 4 Russ. 247; Park v. Peck, 1 Paige, 477; Marks v. Pell, 1 Johns. Ch. 594; and Harding v. Wheaton, 11 Wheat. [24 U. S.] 103; s. c. [Case No. 6,051]. So far as my own recollection of the practice in the courts of the United States has gone, I can say, that I have not the slightest knowledge, that any such exception has ever been urged in the circuit courts, or in the supreme court, although numerous occasions have existed, in which, if it was a valid objection, it must have been highly important, if not absolutely decisive. Until a comparatively recent period, I was not aware, that any such rule was insisted on in England or America, notwithstanding the case of Hall v. Maltby, 6 Price, 250, 252, 258. Indeed, Mr. Gresley, in his late treatise on Evidence, has not recognized any such rule, although in one passage the subject was directly under his consideration, and he relied for a more general purpose on that very case. See Gres. Ev. 161. If it had been clearly settled in England, it would scarcely have escaped the attention of any elementary writer, professedly discussing the general doctrines of evidence in courts of equity.

My opinion is, that the principle to be deduced from the case in 6 Price, 250, before Lord Chief Baron Richards, supported, as it is, by the other cases already cited before Lord Chancellor Hart, is not of sufficient authority to establish the exception contended for, as an exception known and acted upon in the court of chancery in England, whose practice, and not that of the court of exchequer, furnishes the basis of the equity practice of the courts of the United States. I have a very strong impression, that in America the generally received, if not the universal, practice, is against the validity of the exception. If the authorities were clear the other way, I should follow them. But if I am to decide the point upon general principles, independent of authority, I must say, that I cannot persuade myself, that the exception is well founded in the doctrines of equity jurisprudence, as to pleadings or evidence. The exception, therefore, to the master's report must be overruled. It would be a very different question, if the bill should contain no charges, as to admissions or conversations of the defendant, and the defendant should be surprised at the hearing by evidence of such admissions and conversations in support of the facts put in issue, whether the court would not, for the purposes of justice, enable the defendant to countervail such evidence, by giving him leave to offer other evidence, explanatory or in denial of it, upon reference to the master, or by an issue, as was done in the case of Earle v. Pickin, 1 Russ. & M. 547. I imagine, that one reason, why, when evidence of admissions or conversations of the defendant is intended to be introduced, in support of facts charged in the bill, and put in issue, such admissions and conversations are so often charged in the bill, is to avoid the very difficulties, in which the omission must leave the cause; viz. the little confidence, which the court would give to it, as a species of evidence easily fabricated, and the inclination of the court to endeavor, by a reference or an issue, to overcome its force.

I have not thought it necessary, in the view, which has been taken of the exception to the report of the master, to consider with much care the other objection made to the exception; to wit, that the admissions and conversations are sufficiently charged in the bill to let in the evidence, even if the rule were, as the plaintiff's counsel has contended it to be. The only charge bearing on this matter is, that "at all the times aforesaid, as well as at

divers other times, through all the negotiations aforesaid, as well as in many other negotiations in relation to the contract aforesaid, the said Daniel Burnham (the defendant) constantly spoke of the said interest in the said lands of the said Black, as belonging to the said copartnership, and spoke of, recognised, and treated your orator as having an equal and copartnership right therein." This language is somewhat indeterminate; for it is not charged, whether the defendant spoke to the plaintiff, or to third persons; and no persons in particular are named, with whom he held any conversations on the subject. If the rule contended for existed, I should greatly doubt, whether such an allegation, in such loose and uncertain terms, was a sufficient compliance with it; for it would lie open to all the objections, against which the rule is supposed to be aimed. The defendant, to so general a charge, could do no more than make a very general answer. So, that he would be deprived of all the benefit of all explanations and denials of particular conversations. But it is unnecessary to dwell on this point, as the other is decisive.

The exception was overruled.

[NOTE. The cause was subsequently heard on a motion for an account and a dissolution of partnership, and for other relief. The bill was dismissed. Case No. 13,019.]