## NUTTER L. CANNON,

### *vs.*

## EDWARD E. COLLINS.

*Sussex, March T. 1867.*

Where a parol contract, within the Statute of Frauds, has been part performed, a denial of it in the answer is not conclusive, and parol proof of it is admissible.

The effect of part performance is to take the case, in equity, wholly out of the Statute and to open it to full investigation by the Court, untrammeled by the Statute.

Admissions or confessions of a defendant, relied on to prove a parol contract for the re-conveyance of lands, are admissible in evidence without having been alleged in the bill.

Where the contract was for the destruction of the deed, the parties supposing that sufficient to revest the title, and there was no agreement for a reconveyance, a court of equity may, nevertheless, decree a reconveyance.

Courts of law are held to the literal stipulations of a contract, but a court of equity may enforce the contract according to its substantial purpose, and will not suffer the purpose to be defeated through mistake of the parties.

One of the most important powers of a court of equity is to reform contracts, where the parties, by mistake, have failed to stipulate in terms according to their real intentions.

BILL FOR SPECIFIC PERFORMANCE :—This is a bill for the specific performance of an alleged contract for the re-conveyance of title to fifty acres of land, which Cannon, the complainant, with his wife had, by deed dated March

1st, 1864, conveyed to Collins the defendant. The purchase money, $992.06, was secured by two judgment notes, one for $500, the other for $492.06, both dated March 1st, 1864, and payable March 1st, 1869. Judgments were entered on these notes. Collins entered into possession of the land. Thus far the facts are not in dispute. The controversy arises upon the allegation of the bill that, after the conveyance to Collins, to wit, on the 24th March, 1864, it was agreed between them that, in consideration that Cannon would pay to Collins $60 in cash, would pay the costs on the judgments, enter satisfaction upon the record of the judgments and surrender the notes, he, Collins, would surrender the deed, and that as a part of the arrangement, the notes and deed should be burned in the presence of both, the parties supposing that the destruction of the deed would be effectual in law to revest in Cannon the title to the land. The complainant alleges that on his part, the contract was wholly performed ; that on the the 28th of March both parties went together to Georgetown, where the complainant entered satisfaction of the judgments and paid the costs ; that they returned to Cannon's house where, sitting together at a table alone, the $60 was paid and the notes and deed produced ; that Collins took the papers into another room where there was a fire, as if to burn them ; that, in fact, he did burn the notes, but fraudulently secreted and kept the deed and afterwards claimed, and has persisted in claiming title under it.

The defendant denied that there was any contract whatever for rescinding the sale and conveyance to him, alleges that, among several propositions made to him by the complainant, the one accepted, agreed upon and carried into effect was, that the judgments should be satisfied upon the cash payment of $850. That it was to do *this* that the visit to Georgetown was made. All the alleged transactions at Cannon's house respecting the payment of $60, and the disposal of the notes, are flatly denied.

The result of the answer is a full denial responsively of the facts on which the complainant's equity depends, that is, the making of the contract as alleged and its part performance.

Very voluminous depositions were taken for the complainant. On the point of controversy, the agreement for rescinding the sale and redelivery of the deed, there was no direct testimony. The evidence of complainant consisted of Collins' admissions in March and April 1864, proved by five witnesses. The admissions, as proved, taken together, established the agreement as alleged in the bill, in all its details, its execution on the part of Cannon, and the fraud on the part of Collins. These admissions are sufficiently stated in the opinion of the Court. There was testimony also that Collins was a young man living with his mother and without visible means of support except this land, also that he was of indolent character and dissipated habits.

No depositions were taken for the defendant.

Exceptions had been taken to the testimony relating to Collins' admissions, on the ground that they were not alleged in the bill, nor in any pleading, and were not in issue.

It was agreed that the exceptions should be considered upon the argument at large. The case being argued mainly upon the exceptions to the testimony of complainant, was opened by

*Wright*, for the defendant.

The evidence relied on to prove the contract and part performance, rests wholly upon parol admissions said to have been made by the defendant. These are inadmissible because not alleged in the bill. Such is now the settled English rule. 2 *Dan. Ch. Pr.* 995; *Gresley's Eq. Ev,* 288; *Whaley vs. Norton,* 1 *Vernon* 483; *Hall vs. Maltby,*

6 *Price Exch,* 240; *Mulholland vs. Hendrick,* 1 *Molloy* 359; *Earle vs. Pickin,* 1 *Russ. & Myl.* 547; *Austin vs. Chambers,* 6 *Clk. & Fin.* 38; *Atwood vs. Small, Ib.* 516; *Sto. Eq ; Pl. Sec.* 265. The main object of the rule, under the English practice, was to afford the defendant an opportunity to cross-examine witnesses as to the admissions, which otherwise he could not do intelligently, since in England the complainant's interrogatories are not communicated to the defendant, and he cross-examines only from his knowledge of the case as made by the bill. This reason for the rule does not, it is true, exist under our practice; but, even here, the defendant may, without notice in the bill of the admissions relied on, be much embarrassed in adducing counter evidence and in impeaching the character of the witnesses, since the complainant may defer taking out his commission until within thirty days of the term. But another ground on which the English practice rests, equally applies in this State, that is, the necessity of giving the defendant, by notice in the bill, opportunity in his answer to deny, confess and avoid or explain the alleged admissions. In equity it is the defendant's right by answer to make evidence for himself, at least, his right to have the entire case alleged, that he may be able to meet it. Otherwise, the complainant might recover upon an admission sworn to by but one witness. In the American Courts, only one case has arisen, and that was decided against the English practice. *Smith vs. Burnham,* 2 *Sumner,* 612. But Judge Story, who decided that case, evidently did not consider the rule as fully settled in England, there having been at that date only three decisions, of which one was in the Exchequer and another in Ireland. But since then the two cases in the House of Lords, (reported in 6 *Clark & Fin.*) have fully established the rule—a consideration which must have modified Judge Story's decision of the case in *Sumner.* In this State, the English rules of practice govern ours. Such is the effect of our statute *Rev. Code Chap.* 95, *p.*

568. The authority given to our Court of Chancery is to examine witnesses &c. according to the course of the Court of Chancery in England. Accordingly we have, in all its material features, followed the English practice.

*Moore,* for the complainant.

*First*, as to the exceptions : Admitting the rule to be as stated under the English practice, it is there founded on a reason peculiar to that practice, viz : that the defendant has no notice of the complainant's interrogatories. *Sto. Eq. Pl. Sec.* 265 *a.* Here, under the rule of Court, a copy of the interrogatories is served and the proof can cause no surprise.

The authorities in this country are against the English rule. *Smith vs. Burnham,* 2 Sumn. 612 ; 3 *Greenl. Ev. Sec.* 323 ; 1 *Ib. Sec* 171 *note* 1 ; *Mitf. Eq. Pl.* 45 *and note.*

The complainant cannot be supposed to know, at the time of filing his bill, by what evidence his charges can be supported. Injustice may be worked by requiring evidence by way of admission to be stated in the bill, or that complainants shall be precluded from using it. In the present case, the admissions are all relevant to the charge of fraud in the bill.

*Secondly*, as to the merits : The bill shews sufficient equity by alleging a contract and part performance by complainant. Performance or part performance takes the case out of the Statute of Frauds. *Townsend vs. Houston,* 1 *Harring.* 532 ; 4 *Kent Com.* 451 ; *Thompson Ex'r. vs. Graham et al.,* 1 *Paige* 384.

The evidence fully sustains the bill. The facts surrounding the transaction are consistent with it. As to the admissions, they prove every allegation and establish the case in all its details ; and equally in all circumstances, are inconsistent with the statements of the answer.

The prayer for relief is in the alternative ; we prefer the specific performance.

*Wright*, for the defendant.

The case rests on the exceptions. From the nature of it, as stated in the bill, the defendant could adduce no evidence. The whole transaction is alleged to be without writing or witnesses. The defendant could only oppose his answer and resist the evidence of admissions relied on.

Without the admissions the evidence does not sustain the bill, but rather the answer.

But was this a sufficient contract, if proved, to warrant a decree ? The contract as set out was, on Collins' part, that he should destroy the deed, nothing more, not an agreement to execute a re-conveyance. The destruction of the deed would vest no title in Cannon ; nothing short of an actual reconveyance ; and this Collins, not having agreed to execute, cannot be compelled to do. As to the alternative prayer for decree, *i. e.,* for payment of notes ; these not being payable until March 1st, 1869, a decree cannot now be made for payment. Complainant still has his judgments and can execute them, when due, subject to Collins' proceeding in equity.

The deficiency of equity in the bill for want of a written contract, rests upon this principle : that where the defendant, not denying a parol contract, pleads the Statute, complainant may show a performance ; but not where the defendant by answer denies the contract altogether.

*Cullen*, for complainant, in reply.

The rule contended for, as to the admissions, would exclude them if made after bill filed, or even after answer filed. There is not one authority in this country for the rule and the only decisions on the subject are against it.

---

Opinion:—effect of part performance under a parol contract.

---

*Smith vs. Burnham 2 Sumn.* 612 ; *Brandon vs. Cabiness,* 10 *Ala.* 156.

The bill must state the facts which make up the case, but not minute circumstance, which tend to establish the facts. *Barton's Suit in equity,* 42.

The defendant, having filed cross-interrogatories, is precluded from this objection, or any not allowed in the Rules of Court, as to the execution of the commission and character of witnesses. Having actually cross-examined to these admissions, he cannot complain of surprise from want of notice.

It is incorrect to say that only a re-conveyance could divest Collins' title. This is so at law, but not in equity. An equitable title may arise from contract and consideration, to perfect which, equity will enforce a conveyance.

THE CHANCELLOR :—

In the argument for the defendant, an objection was taken which, if tenable, would dispose of the whole case at this point. This objection was that, in as much as the contract is alleged to have been a *parol* contract, not in writing as the Statute of Frauds requires, and as the answer denies the existence of any contract, thus putting the complainant to the proof of it, he can prove it only by writing as the Statute requires,—and that, too, notwithstanding a part performance is also alleged and proved, that part performance avails only where the fact of the contract, not being denied, the Statute is pleaded in defense. This argument makes the denial of a parol contract by the answer conclusive in all cases. Of course it is so where there has been no part performance, for then the case is governed strictly by the Statute ;—but is the denial of the contract by the answer conclusive, precluding parol proof of it by the complainant, when the contract has been part performed ? That is the question. I think in such case the answer is not conclusive. The effect of

part performance is to take the case, in equity, wholly out of the Statute and to open it to full investigation by the Court, untrammelled by the Statute. Nothing short of this would answer what is the object of the interference of a court of equity to enforce a contract partly performed. This object is to prevent a fraud on the part of the defendant, which it would be, were he, having received from the other party the consideration of the contract, to refuse to perform it himself. But if the Court can relieve for part performance only when the defendant admits the contract; if the Court is precluded by the denial of the defendant from receiving parol proof of the contract, however real and conclusive may be the amount of it, then the exercise of what has been considered a very beneficial power of the Court, the power to prevent fraud in a defendant who has contracted to convey and received the consideration for, is made to depend wholly on the election of the defendant, whether to admit or deny the contract. This doctrine would enable an unscrupulous defendant effectually to consummate his fraud ; and to all defendants in these cases it offers a temptation to perjury—whereas, on the other hand, the danger of fraud by admitting parol proof of a contract which has been part performed is far less. For the Court can exercise a sound discretion as to the measure of evidence it will require against the denial of the answer ; and in all such cases, the part performance itself being proved, is explicable only by the fact that a contract was made, and affords strong independent evidence of it.

There is no case in which this precise question has been presented. In some cases it has been said, in general terms, that if the answer denies a parol contract, which is within the Statute of Frauds, the complainant cannot prove it except by writing. *Whitchurch vs. Bevis*, 2 *Bro. C. C.* (567) ; *Ontario Bank vs. Root*, 3 *Paige*, 478 ; *Cozine vs. Graham*, 2 *Paige* 171-181. But in these dicta it will

be found that reference is had to parol contracts not part performed. See 1 *Story's Eq. Jur.* 758, *note* 4.

On the other hand, there are cases of parol contracts, part performed, in which, though it is not denied by the answer that some contract was made, yet the terms, as alleged in the bill, are denied. In these cases the Court has ascertained the terms by parol proof. 1 *Sugd on Vend.* 170; *Morphett vs. Jones,* 1 *Swanst.* 172; 6 *Ves. Jr.* 41, *note* 9. Now these cases, in effect, overrule the doctrine of the objection. For a denial by the answer of the alleged terms of the contract is substantially a denial of the contract; and the admission against the answer of parol proof of the existence of a contract is no more dangerous or against the policy of the Statute, than is the admission of parol proof of the disputed terms of a contract.

I, therefore, proceed, notwithstanding the denial of the contract by this answer, to inquire whether the complainant has adduced sufficient evidence, though it may not be written, to overcome the answer.

Taking up this question, it appears that there is no *direct* evidence of the contract and of its part performance :—as by writing or by the testimony of a witness present. The complainant relies for proof wholly upon certain admissions on the part of Collins, testified to by several witnesses. An exception to the admissibility of all this testimony has been filed, and properly should be disposed of before any examination of the evidence excepted to ;—but in order to show how entirely the case rests upon the validity of the exception, it may as well be stated in advance, as the result of my examination of the testimony, that admissions on the part of the defendant are proved, which, if competent evidence, are sufficient to sustain the complainant's case,—while, on the other hand, if these admissions are not competent evidence, the case fails. The disposal of the exception is, therefore, decisive of the case, one way or the other. The question raised by

it is new in our practice, is one of serious consequences, and was extremely well argued. It claims a careful consideration.

The ground of the exception is that,admissions or confessions by a defendant to be admissable in evidence must have been alleged in the bill. Is this necessary? Clearly it is not neceseary *for the general purposes of pleading.* The object of the bill, considered as a pleading, is to give notice to the defendant of the case made against him, that he may either admit it or allege his grounds of defense. What,therefore,for the purposes of pleading it is necessary to allege in the bill are the facts which constitute the complainant's case,—such as are necessary to entitle him to the relief prayed for, being so necessary *of themselves* and not serving merely as the evidence of other facts on which the right to relief depends, and which are equally effectual, whether proved in one mode or another. The facts required to be alleged are such that, should any of them be striken out, the complainant's case would be left on its face without equity and the bill be rendered demurrable. But distinct from such essential facts, and subordinate to them, are other facts which are mere materials for proof, which do not themselves enter into the complainant's case but are evidence to prove it.

These need not be alleged. *Sto. Eq. Sec.* 257. The distinction is between the *allegata* and the *probata*, the facts to be proved and the evidence by which they are proved. An apt illustration of it is found in the present case. The contract for a reconveyance of the land by Collins to Cannon (or for what is equivalent) and, as the contract is alleged to have been by parol, a performance or part performance by the complainant, are the two constituent facts of his case, the facts out of which his right to relief springs. Without either of them there would be no equity and no case to be answered. These, therefore, must be alleged with sufficient particularity of time, place and circumstance, for the purpose of fair notice. Admissions

by the defendant, that there was such contract and that it was part performed, are but one of several modes of evidence to prove these facts. It is not essential to the case that the proof be by admissions ; any other satisfactory evidence, such as written evidence of the contract, or the testimony of a witness present when it was made and part performed, would serve as well. The admissions then do not enter into the equity of the case and need not be stated for the purposes of pleading.

Sometimes admissions by a defendant are essential to the complainant's case ; as where the admission of a debt is relied upon to avoid the legal presumption of payment resulting from lapse of time. Such admissions become part of the issue and must be alleged, but not so when they are used only as evidence of the facts which are admitted, and which are of equal effect if proved in any other mode.

In *Hall vs. Maltby*, 6 *Price Exch.* 258-9 where in a bill there was a charge of fraud, the Chief Baron Richards held that "in cases of fraud declarations of a fraudulent "purpose are often of the very gist of the case" and should therefore be stated on the record as part of the complainant's case ; and on this ground he excluded evidence of confessions by the defendant of his fraudulent purpose in the transaction charged because they were not alleged in the bill. It was a case too of a confession made after the fraudulent transaction and not as a part of the *res gestae*.

I am unable to accept this doctrine. The declaration of a fraudulent purpose in a transaction if made at the time of the transaction, may qualify the legal effect of the transaction, *i. e.*, may make it a subject of relief when otherwise it would not be so. Under such circumstances the declaration of a fraudulent purpose *may* be of the gist of the case and therefore may need to be alleged, but certainly, after a fraud has been committed and the remedy it entitles to has attached, when only *evidence* of the

transaction and its purpose is needed to secure relief, the confession of it is not of the gist of the case ; the equity arose before the confession was made and exists without it ; it is but evidence. But, further, this doctrine, if sound, could not apply to the confessions offered in the present case ; because, although a fraudulent purpose on the part of Collins in secretly retaining the deed is charged in this bill, the fraud as charged is *not the ground of relief.* This is a case for the specific performance of a contract to revest a title, and the Court will relieve, if at all, on the sole ground of the defendant's contract.    The complainant's right to a performance became complete under the contract made on the 27th March, and the performance on his part, at Georgetown on the 28th of March, before Collins, according to the allegation, secreted the deed.    It is his mere omission to fulfill his agreement, independent of any clandestine act or fraudulent purpose, which entitles Cannon to relief.    The secretion of the deed is an incidental circumstance, the omission to state which, would not have impaired the equity of the bill, and, properly speaking, it forms no part of the complainant's case.

But still it is argued that the admissions of a defendant, intended to be proved, must be alleged in the bill, if not under the rules of equity pleading, yet as *an exception to them;* for which authorities are cited. All of these, and some not cited, I have examined. Such is shewn to be the practice in the Exchequer by *Hall vs. Maltby,* 6 *Price* 240 ; and in the Irish Court of Chancery by *Mulholland vs. Hendrick,* 1 *Molloy* 359; *Fitzgerald vs. O'Flaherty, ib.* 347 ; *Blacker vs. Phepoe, ib.* 354 ; and *Farrell vs.————,* *ib.* 353.    Besides these, are several cases in the House of Lords, decided in 1838, which leave no doubt that the same practice has obtained in the English Court of Chancery—*Austin vs. Chambers,* 6 *Cl. & Fin.* 2 ; *Coplain vs. Foulmin,* 7 *Cl. and Fin.* 349.    In these cases the rule, as contended for, is recognized as an existing one by Lord Cottenham.    *Atwood vs. Small,* 6 *Cl. & Fin.* 516, cited to

this point, is not applicable. It only held that on a charge of fraud, proof is inadmissible of acts of fraud not specifically charged. The evidence rejected was of transactions, not confessions. In the cases in the House of Lords no previous decisions are cited other than *Hall vs. Maltby* and the Irish cases, and these are, doubtless, the only decisions reported. No English text books touch the question ; so that in these cases, we have all that relates to the subject under the English practice. In the American reports no corresponding decisions are found, but in two American cases the English practice has been rejected—*Smith vs. Burnham*, 2 *Sum.* 612 ; and *Brandon vs. Cabiness*, 10 *Ala.* 156.

The English rule on examination will be found to rest upon grounds which are not applicable under our practice. The grounds stated in the case cited are two ;—one, that the defendant may be able to cross-examine the complainant's witnesses as to the supposed admissions and to adduce counter-proof ;—the other is, that the defendant may have opportunity, by his answer, to deny or explain the alleged admissions.

The first of these reasons grew out of a peculiarity of the English practice as to taking testimony. Under it the interrogatories in chief are not disclosed to the adverse connsel. His attempt at cross-examination is guided only by the allegations of the bill. Consequently, if the intention of the complainant to prove his case by admissions of the defendant were not disclosed in the bill, the defendant would remain in total ignorance of it until publication of the testimony, too late for cross-examination or rebutting evidence. Our practice is different. Before the commission can issue, a copy of the complainant's interrogatories must be served on the adverse party with sufficient time to enable him to cross-examine as well as to except to improper interrogatories. For the purpose then, of allowing defense by proof, any statement in the bill of the admissions relied upon is needless ; and,

indeed, it would be far less satisfactory than a due service of a copy of the interrogatories  The defendant's counsel argued that, under our practice, the opportunity for adducing proof to rebut evidence of admissions might be prejudiced under the rule which requires commissions to issue more than thirty days before the term.  Were this so, it would be a reason to revoke or amend the rule, or to give the defendant, in the particular case, further time to adduce his counter proof,—nothing more.

The other ground assumed for the English practice is, that the defendant may have opportunity, by his answer, to deny or explain the alleged admission.

Frequent and close readings of all the cases and a careful consideration of the whole subject, have left me with the conviction that the English practice does not, in fact, rest upon any such ground,—that it was not introduced in order to give the defendant the advantage of making his own oath evidence against an alleged admission by him. This advantage was an incidental consequence of the rule, but did not enter into its policy.

In considering this point, we must bear in mind at the outset, that it is not *a right* on the part of the defendant to make himself a witness in a cause,—no more so in equity than at law.  In a system of jurisprudence so well adjusted and consistent as is the English, so gross an incongruity could not be endured, that a defendant should, in one court, be held unworthy of any credit as a witness, and in an other jurisdiction should be admitted as a right to put his oath against the complainant's case, and that, too, with more weight than attaches to the oath of a disinterested witness. How it has come about that the answer of a defendant in equity, so far as it is responsive to the bill, has the effect of evidence is easily accounted for.  It has always been one of the remedial powers peculiar to a court of equity, to enable either party to obtain from the other, for the purposes of the cause, a discov-

ery of matters within his knowledge ; the complainant obtains it by his bill in an original suit ; the defendant may obtain it by a cross-bill. Originally, equitable remedies, chiefly applied to cases in which a discovery was needed in order to relief, such as cases of trust, fraud, mistake, accident, &c. Hence, discovery, as well as relief, became one of the objects of a proceeding in equity ; and, hence, the present structure of a bill in equity. It embraces two distinct objects ; one is the statement of the complainant's case in order that the defendant may set forth his defense by way of traverse, or confession and avoidance ; the other object of the bill is to obtain from the defendant a discovery to aid the complainant in the proof of the case alleged by the bill. It is to the latter purpose that the prayer for answer, and the interrogatories apply. So the answer is two-fold. It is both a pleading and a discovery. As the defendant is obliged, by the frame of the bill, besides setting forth his defense in his own way, also to disclose, under oath, his knowledge touching the allegations of the bill ; his answer, so far as it is responsive, is more than a pleading, it is a discovery made to afford evidence in the cause. Being made evidence, at the instance of the complainant, and for his benefit, it becomes evidence for the defendant also. For, if evidence at all, it must be so for all purposes, as well for one party as the other. Hence, clearly the defendant's answer becomes evidence in his favor, not to give effect to any supposed right on his part to make himself a witness in the cause, but it is a mere consequence of the complainant's exercise of *his* rights to a discovery.

Under the frame of the bill in equity, in common use, the answer is, in point of fact, evidence in all cases ; and our habit of so dealing with it naturally leads us to regard this effect of the answer as if it were a right on the part of the defendant, so far as it concerns those material facts of the complainant's case which he is obliged to allege. But suppose a rule to be proposed which should compel

the complainant involuntarily to set forth, not only the constituent facts of his case, but his *evidence*, in order to give the defendant the benefit of his own oath against it, such a rule would not be endured, certainly not as to any other sort of evidence than *confessions*. To oblige the complainant then to disclose, in his bill, this kind of evidence, *i. e.*, confessions on the part of the defendant, for the purpose of enabling him to put his oath against it, would be an exception to the whole course of practice on this subject ; and for such an exception no sufficient reason can be assigned. It is said, and truly, that confessions may sometimes be explained by the defendant, in a sense different from that imputed to them by the bill, and truthfully so explained ; but in other cases, the defendant may, by his answer, gloss the admissions before made by him, or pervert their meaning ; so that, if sometimes the defendant's oath may prevent a fraud, it may sometimes consummate one. The chances are not very unequal. Besides the *acts* of a party, as well as declarations, are sometimes equivocal, susceptible of different constructions, and open to explanations, yet as to a defendant's acts, it never was suggested that the complainant should be required to disclose his intention to prove these. Again, confessions are regarded as a dangerous sort of evidence, the proof of them being liable to mistake and fraud. A defendant may (in the phrase used in the books) " be admitted out of his estate." This is true, and it is a stringent reason for requiring that admissions should be *unequivocal*, established by clear proof, and that the defendant should have full notice and opportunity to cross-examine the complainant's witnesses and to adduce counter proof ; but it does not warrant giving the defendant the additional advantage of making himself a witness.

Considering then, that in none of the cases cited, were the origin and grounds of this rule a subject of distinct examination, and that without such examination it is but natural that judges in general observations on the subject,

should treat an advantage resulting to the defendant from the rule, as if it had been originally one of its objects. I do not feel that what has fallen from the judges in the cases cited, is sufficient to overcome the extreme improbability that it was one of the objects of this rule, to enable the defendant by his *answer*, to rebut the proof of confessions by him. The real and whole object of the rule was to afford an opportunity for cross-examination and rebutting proof, by making a statement of the supposed confessions in the bill serve instead of a copy of the complainant's interrogatories. From this, it resulted that the answer became evidence as to this, as well with respect to other allegations to which it might be responsive ; *but* such was not one of the objects for which the rule was introduced, and does not enter into its policy.

But it may be remarked further, that even supposing this view of the origin and object of the rule to be erroneous, and that it is the policy of the English practice, to enable the defendant, by his answer, to deny or explain confessions intended to be proved against him, still it is open for consideration whether our courts should adopt this policy, and on *this* ground enforce the rule in question. So far as the subject has been considered in the courts of this country, the authorities are against it. In the case in 2 *Sumner*, upon a thorough examination by Judge Story, the English rule was rejected : So, also, in the case in 10 *Alabama*. In this State there are neither decisions nor practice to guide us. Left to decide the question upon principle, I have no hesitation in rejecting the rule.

My conclusion is, therefore, to overrule the exceptions, and to admit the evidence.

This brings us to consider the evidence, and particularly whether it is sufficient to outweigh the denial, by the answer of the complainant's case.

Six witnesses in all testify to declarations made by Collins as to the matter in controversy, viz : William and

Isaac Phillips, Frances and Sarah Scott, Cordy and Dr. Ellegood. What are these declarations?

To Wm. G. Phillips, in the spring of 1864, Collins, in a free talk about the arrangement as one not yet executed, stated that, upon Cannon's proposition, it was agreed between them, that Cannon should go to Georgetown and enter satisfaction of the judgments, get the notes from Mr. Cullen and take them to his house in Concord, and, said Collins, "I would meet him there, and we "would settle up for the $60 or $70, (the witness did not "remember which sum it was that Collins stated,) and "the cutting and hauling the wood, and he could then "give me up the notes, and I would give him up the deed "and the land." (Answer to third interrogatory.) Collins had stated to the witness, that, as a part of the bargain, he was to haul to Pottsville some wood which he had cut, and to account to Cannon for the proceeds, less expenses. A month or two after this, upon inquiry by the same witness of Collins, whether he and Cannon had fixed up their business, Collins said "yes, the old man came up to his "proposition, and we settled for the $60 or $70, (one of "which sums he named,) and for the cutting and hauling "of the wood ; anyhow, I got the notes, and I gave him "up the land."

To Isaac G. Phillips, Collins, about the same time, stated the bargain in substantially the same way, except that this witness puts the cash payment at $70 or $75. To this witness he also stated, but more fully, the performance of the bargain,—that he and Cannon met to settle,—that Cannon pulled out the money agreed for and paid him,—that the notes and deed were lying on the table ;—that he gathered them up, flung them into the fire and burnt them ;—"and so" said he, "I gave him "(Cannon) up the land." ·

To Joseph E. Cordy, in March, 1864, Collins stated that Cannon was to take the land back, that he was to

give Collins $100, and surrender the notes, and that he, Collins, was to surrender the deed. He also spoke of his having been with Cannon to Georgetown, as the witness says, "to see something about the deed and notes ; it was "either to give up the deed or to make Cannon a new deed."

It would seem from Collins' declarations to these witnesses, in the spring of 1864, that he *then* contemplated carrying out his agreement in good faith. However this may be, he afterwards determined to hold the property. The answer admits that in September, 1864, when Cannon came upon the land to shew it to a person proposing to purchase it, Collins repudiated the bargain and claimed to hold the land. So, also, he did to Sheriff Marvel, and to Dr. Ellegood, when called on by them in the same month. But, notwithstanding he had determined to hold the property if he could, declarations escaped him which are consistent only with his statements before made to the two Phillipses. In a conversation with Dr. Ellegood, at Laurel, while on the way to Georgetown, in the Sheriff's custody, Ellegood having suggested that there might have been some one in Mr. Cannon's parlor when they transacted the business who overheard their conversation, Collin's replied, " Cannon told me, when we went into the " parlor, that he took me there to keep his wife or any one " else from knowing how much he had to sacrifice to get " the land back." Afterwards, shortly before Christmas, in the same year, as Sarah A. N. Scott testifies, in a conversation between Collins and her mother, occasioned by her application to rent the house on the land bought from Cannon, he stated that neither he nor Cannon had any right to the land. He was asked how he could rent the house if he had no right to it, and whether he had burned the notes and the deed. He replied, the notes I " put in ashes, and the deed I put in my pocket. " He also said, in flat contradiction of his answer, that " the place " had never cost him the first red cent, and that he never

"expected it to cost him anything ; but it should cost old "Nutter something before he was done with it" (answer to 4th interrogatory). Again, in January, 1865, he talked in much the same style to Frances E. Scott.

It is not material that the witnesses fail to remember and to agree as to the exact sum of money which Collins said Cannon had agreed to pay him. Whatever might be the real sum it was admitted to have been paid. That is sufficient. Again, Collins' statement to Isaac G. Phillps, that he burned the deed with the notes, is of no effect. Whether he did or did not burn the deed, (and his subsequent conduct makes it probable he did not,) still the complainant is none the less entitled to a re-conveyance as a means of perfecting the title intended to be revested in him..

The declarations testified to by these witnesses were made at different times ; they were wholly unsolicited, except by Dr. Ellegood ; they were unequivocal in their terms and could not have been misunderstood ; they are testified to by witnesses who are disinterested ; unbiassed by any relationship, except, possibly, Dr. Ellegood ; all unimpeached, and in many points corroborating each other ; and against their testimony no counter-evidence is adduced. This testimony must then be accepted as true. It far outweighs the answer, and establishes the complainant's whole case ; for it proves both the contract and the performance on the complainant's part, substantially, as alleged in the bill.

But an objection was taken in the argument for the defendant, that, even supposing it proved, as we have found it to be, that a contract was made, as alleged in the bill, or (which is the same thing) taking the case as it stands on ·the bill as if the bill were demurred to, still that no relief can be given ; because Collins stipulated not for a re-conveyance of the premises to Cannon, but only for a destruction of Cannon's deed to him.

The argument is that no decree can be made for a re-conveyance by Collins to Cannon as prayed for by the bill since a re-conveyance was not stipulated ; that a decree for less, say for the surrender and cancellation of the old deed would be nugatory, such as a court should not make, and hence that this is a case, on the face of the bill, without remedy in the way of revesting the title.

This objection is not tenable.    The contract alleged and proved, though in its terms stipulating only for the surrender and destruction of the old deed, was, in substance and effect, a contract that Cannon should be re-instated in the title as he held it prior to his conveyance of it to Collins.    Nothing less than this was intended.    It was for this that Cannon entered satisfaction of the judgments and paid the $70, and for this, Collins received these benefits.    The real purpose of the contract and the obligation assumed by Collins was, to revest the title in Cannon ; the destruction of the old deed was stipulated for, only as the means which they supposed effectual for the object really contracted for.    As they erred in this, equity will compel Collins, he having received the consideration for revesting the title, to adopt the appropriate legal method of effecting it, i. e., by a re-conveyance.    In this, equity does not violate the contract, but enforces it according to its true object and meaning and the real obligation assumed by the parties.

Courts of law are held to the literal stipulations of a contract ; but a court of equity may enforce the contract according to its substantial purpose, and will not suffer this purpose to be defeated through mistake of the parties. One of its most important powers is to reform contracts, where the parties, by mistake, have failed to stipulate in terms according to their real intentions.    It will do so on a bill filed for this object only, and when no further relief in equity is sought ; but the object is to take a remedy by action at law on the reformed contract.    Where, as in this

case, the contract is sought to be enforced in equity, this Court will, exercising substantially the same power, enforce it according to its real purpose, treating it as if it had been reformed according to the intention of the parties. I, therefore, feel quite free to decree a re-conveyance of the land by Collins to Cannon's representatives, who, by agreement filed, have been made parties to the cause in his place, he having died since the last term. The executor of Cannon, now also a party, is entitled to an account for the rents, issue and profits of the land which have accrued since the 27th day of March, 1864, that being the day on which Cannon, according to the true intent of the contract, was to receive back the property, the title to it, and, as a consequence, the possession of it. The executor is also entitled, under the contract as proved, to an account of the proceeds of sale, of all wood cut and being on the premises on the 24th day of March, 1864, the date of the contract, less the expense of hauling it to Portsville.

Let a decree be entered accordingly.